IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| LONNIE KADE WELSH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:20-CV-077-BQ |
| | § | |
| LAMB COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Proceeding pro se and *in forma pauperis*, Lonnie Kade Welsh filed this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights in connection with state criminal charges initiated and pursued against him. Second Am. Compl. 2–16, ECF No. 19. Welsh seeks monetary damages for his alleged injuries. *Id.* at 16–23.

Welsh filed his original Complaint on March 30, 2020. ECF No. 1. The United States District Judge granted Welsh's Application to Proceed *In Forma Pauperis* (IFP) and transferred this case to the undersigned United States Magistrate Judge. ECF Nos. 2, 8. The undersigned thereafter reviewed Welsh's operative Complaint[1] and authenticated records provided by Defendants and ordered Welsh to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976), which he timely completed and returned. ECF Nos. 20, 23.

Not all parties have consented to proceed before the undersigned magistrate judge. In accordance with the order of transfer, the undersigned makes the following findings, conclusions, and recommendations to the United States District Judge.

---

[1] Welsh filed his First Amended Complaint on June 16, 2020 (ECF No. 13), and later filed his Second Amended Complaint on July 23, 2020. ECF No. 19.

## I.    Standard of Review

Section 1915(e) requires dismissal of an IFP complaint *at any time* if the court determines

the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or

seeks monetary relief from a defendant who is immune from such relief.[2]    28 U.S.C.

§ 1915(e)(2)(B)(i)–(iii); *see Newsome v. E.E.O.C.*, 301 F.3d 227, 231–33 (5th Cir. 2002)

(affirming dismissal of pro se, non-prisoner plaintiff's claims as frivolous and for failure to state a

claim under § 1915(e)(2)(B)(i) and (ii)).    A frivolous complaint lacks any arguable basis, either in

fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).    A complaint

has no arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks

an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327.    When

analyzing a pro se plaintiff's complaint, the court may consider reliable evidence such as the

plaintiff's allegations, responses to a questionnaire, and authenticated records. *See Wilson v.*

*Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th

Cir. 1999) (noting that responses given to a questionnaire are incorporated into the plaintiff's

pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may

dismiss prisoners' in forma pauperis claims as frivolous based on "medical and other prison

records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations

as true, but do not credit conclusory allegations or assertions that merely restate the legal elements

of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).    And while courts

---

[2] At the time he filed his Complaint and IFP application, Welsh was housed at the Texas Civil Commitment Center under an order and judgment of civil confinement. Thus, he is not a "prisoner" within the meaning of 28 U.S.C. § 1915(h) and is not subject to the screening provisions of the Prison Litigation Reform Act. Because Welsh sought and was granted leave to proceed IFP, however, he is nevertheless subject to the screening provisions of 28 U.S.C. § 1915(e)(2). Moreover, the acts he complains of stem from alleged violations during his state criminal proceedings. The Court therefore evaluates his claims under the constitutional standards applicable to pretrial detainees—not civilly committed persons.

hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir. 2002)).

## II.    Discussion

### A.  Welsh's Claims

Welsh asserts claims against the following Defendants:  (1) Lamb County; (2) City of Littlefield; (3) Lamb County District Attorney Scott Say; (4) Assistant Lamb County District Attorney Ricki Redman; (5) and Littlefield Police Chief Ross Hester.  Second Am. Compl. 2. Welsh sues all Defendants in their individual capacities, naming Defendants Say and Redman as principal agents and official policy makers for Lamb County and Defendant Hester and the Mayor (name unknown) as principal agents and official policy makers for the City of Littlefield. *Id.*

Welsh divides his Second Amended Complaint into seven counts for relief, described as follows:

### 1.  *Count I:  false imprisonment and due process*

Welsh claims he was falsely imprisoned by Lamb County, the City of Littlefield, and Ross Hester in violation of his due process rights. *Id.* at 13.  Welsh was arrested for tampering with or fabricating physical evidence in violation of Texas Penal Code Sec. 37.09 on November 28, 2017, and subsequently convicted in May 2018. *Id.* at 2.  A Texas state court sentenced Welsh to eleven years in the Texas Department of Criminal Justice (TDCJ). *Id.*  The entirety of Welsh's present suit stems from this conviction and subsequent appeal. *See id.*

According to Welsh, he was wrongly imprisoned from June 16, 2018, to August 6, 2019, because his conviction was overturned by the Texas Court of Appeals. *Id.* at 3; *see Welsh v. State,* 570 S.W.3d 963 (Tex. App.—Amarillo 2019, pet. ref'd).  He alleges that his wrongful conviction

3

"was a deliberate decision from the County and City policy makers to follow a course of action to be the moving force to violate [his] rights." Second Am. Compl. 3. In support, he alleges that several violations of his procedural and substantive due process rights occurred during the prosecution. *Id.* at 6–7; Questionnaire 1, 14, 15.[3] First, he claims Lamb County violated his procedural due process rights because it "prevent[ed] [him] from presenting both capacity evidence and evidence of his insanity." Questionnaire 5. Second, he claims Defendants Lamb County, the City of Littlefield, and Hester violated his due process rights "by manufacturing a criminal charge" because the underlying "facts of the case do [not] comport with the law" of his charge. *Id.* at 1. In addition, Welsh contends Defendant Redman improperly "used evidence of [his] sexual crimes to help turn the ire of the jury against him in opposition" to the court's orders. Second Am. Compl. 7; Questionnaire 15. Welsh further avers Defendants "Say and Redman conspired with a Chris Woods to dispose of physical evidence of a video tape that continuously videoed Welsh while in an administrative sell [sic] after the physical assault by Woods' staff." Second Am. Compl. 7. Concluding his allegations, Welsh claims Defendants Say and Redman relied on Defendant Hester's perjurious testimony in obtaining the conviction. *Id.*; Questionnaire 14. Welsh asserts that Lamb County, the City of Littlefield, and Hester's conduct caused him "severe mental sickness of depression, anxiety, and sleepless nights due to worry, with the added physical illness causing pain by headaches and nausea . . . ."[4] Questionnaire 14.

 *2. Count II: unreasonable seizure without probable cause*

 Welsh contends that Defendants Lamb County, the City of Littlefield, and Hester violated his Fourth Amendment right to be free from unreasonable seizure without probable cause. Second

---

[3] Page citations to Welsh's Questionnaire responses refer to the electronic page number assigned by the Court's electronic filing system.

[4] Welsh generally alleges this harm to each claim. *See, e.g., id.* at 13–16.

Am. Compl. 13. Specifically, he avers that Defendants subjected him to unreasonable seizure by confining him without probable cause in the Lamb County Jail from November 28, 2017 through June 26, 2018, and asking the State to confine him in TDCJ following conviction from June 26, 2018, through August 6, 2019. *Id.* at 3–4.

### 3. Count III: selective prosecution

Welsh claims that Defendants Lamb County, the City of Littlefield, and Hester selectively prosecuted him in violation of his equal protection and due process rights. *Id.* at 14. More specifically, Welsh avers that as a Sexually Violent Predator, he cannot be held criminally responsible because he is insane. *Id.* at 4. He alleges that Defendants Lamb County, the City of Littlefield, and Hester engaged in "discrimination within the law by only prosecuting the SVP insanity class" as "a policy, practice, or custom of" Lamb County. *Id.* When asked in a questionnaire to explain, Welsh responded that "defendants do not prosecute individual[s] who commit similar offenses as Welsh who are mentally ill." Questionnaire 6. According to Welsh, "Lamb County was deliberately indifferent adopting a decision to prosecute Welsh[]" and he was "maliciously singled out for criminal prosecution based on Lamb County's, City of Little Field [sic], and Ross Hester['s] discriminatory animus." Second Am. Compl. 5.

### 4. Count IV: unconstitutional punishment

Welsh asserts that he is entitled "to be free from punishment under the Eighth and Fourteenth Amendments." *Id.* at 14. He contends that he was "unconstitutional [sic] confined . . . by cruel and unusual means" and "was unconstitutional [sic] punished for a crime he did not commit and/or was unconstitutionally punished while he was mentally insane," which "was a deliberate decision from the County and City policy makers . . . ." *Id.* at 6.

### 5.  Count V:  access to courts and due process

Welsh contends that Defendants Lamb County, the City of Littlefield, and Hester violated his right to access the courts by denying him the opportunity to file a non-frivolous legal claim. *Id.* at 15.  In support, he avers that he accused Leslie Dimwiddie, Dustin Tirjerina, Arnulfo Hernandez, Jr., John Cochran, and Adam Peirce each of assault, but that Lamb County (through its principal agents and policy makers Say and Redman) and the City of Littlefield (through its agents the Mayor and Hester) refused to process his claims.  *Id.* at 7–9.  Similarly, he claims he accused "Cochran and Various [TCCC] employees" of using "unlawful restraints," but that Defendants again refused to process the claims.  *Id.* at 9–10.  Lastly, Welsh asserts he lodged complaints against John Cochran and Michael Searcy for sundry violations of the Texas Constitution and United States Constitution, but Defendants again allegedly refused to process the claims.  *Id.* at 10–11.  According to Welsh, this nonfeasance also violated his procedural and substantive due process rights.  Questionnaire 32, 36.

### 6.  Counts VI and VII:  equal protection

As to counts six and seven, Welsh generally avers that Defendants violated his Fourteenth Amendment right to equal protection due to the above purported violations.  *Id.* at 15–16.  Welsh claims Defendants Lamb County, the City of Littlefield, Say, Redman, and Hester (*id.*) violated his right to equal protection because he was "prosecuted for defending himself . . . ."  Questionnaire 31.

## B.  Welsh's underlying criminal case.

A jury convicted Welsh on one count of tampering with or fabricating physical evidence with the intent to affect the course or outcome of an investigation or official proceeding.  *Welsh*, 570 S.W.3d at 964.  The trial court sentenced him to eleven years in TDCJ.  *Id.* at 965.  On appeal,

Welsh argued that the evidence was insufficient to support his conviction—the appellate court agreed. *Id.*

According to the record before the appellate court, while confined as a civil committee Welsh admitted he intentionally "became combative" during transport to a medical appointment because "he had a 'plan' to cause the employees to use force against him" and then sue the staff. *Id.* The court noted that a video admitted into evidence at trial "shows [Welsh's] outbursts and the physical resistance that led to his restraint. Nothing in the video shows the staff injured [Welsh] in any way and no injuries are visible." *Id.* TCCC director of security, Christopher Woods, testified at trial that he saw Welsh "'punching' himself in the face," and a nurse testified that the injuries were self-inflicted. *Id.*

Claiming injuries inflicted by TCCC staff, Welsh asked Woods to call the police to report alleged assaults by various TCCC employees; Littlefield Police Chief Ross Hester responded to the call. *Id.* Hester interviewed Welsh, reviewed witness statements and the video footage, and determined that TCCC staff had not assaulted Welsh. *Id.* At trial, Woods testified, "From the video I saw, I saw no overt blows being struck or kicks administered or anything that would cause those kinds of injuries to [Welsh's] face." *Id.*

Welsh was convicted under Texas Penal Code section 37.09. A person violates this provision if: "(1) knowing that an investigation is pending or in progress; (2) he makes, presents, or uses a thing with knowledge of its falsity; and (3) acts with the intent to affect the course or outcome of the investigation." *Id.* at 966 (citing Tex. Penal Code Ann. § 37.09(a)(2)). Welsh was charged by indictment, which reads as follows:

> [Welsh did] then and there, knowing that an investigation was pending and in progress, to-wit: an investigation into the Defendant's refusal to return to his cell and the use of force used against the Defendant to cause his return to his cell on November 13, 2017, intentionally and knowingly make and present physical

evidence, to-wit: physical injuries on the Defendant's body, caused by the Defendant striking himself with the Defendant's hand and by the Defendant striking himself with an unknown object, with knowledge of the physical evidence's falsity and with intent to affect the course or outcome of the investigation[.]

*Id.*

In evaluating the sufficiency of the evidence, the appellate court noted that Welsh's "injuries, assuming they are to be considered a 'thing,' are undisputedly real. What is false is appellant's allegation that the staff caused those injuries by assaulting him" and it was "the *conveyance* of false information, not the making, presenting, or using of physical evidence with knowledge of its falsity that occurred here." *Id.* at 967 (emphasis added). Ultimately, the court concluded "that the conveyance of knowingly false information about the cause of real injuries is not a violation of section 37.09(a)(2)" and reversed Welsh's conviction. *Id.* at 967–68.[5]

**C. The District Judge should dismiss Count I:  false imprisonment and due process.**

Welsh alleges that Defendants Lamb County, the City of Littlefield, and Hester falsely imprisoned him in violation of his due process rights.   Second Am. Compl. 13.   Welsh acknowledges that a state magistrate judge determined probable cause existed for the issuance of an arrest warrant, but he claims that "the process was tainted by the sworn affidavit of Ross Hester" because he "reckless[ly] misstate[d] [the] law."   Questionnaire 2.   He likewise argues that the grand jury's indictment was "tainted" due to the "reckless statements of law and fact." *Id.* at 3.

*1.  False imprisonment*

The United States Supreme Court has held that "false imprisonment is detention *without legal process*." *Wallace v. Kato*, 549 U.S. 384, 389 (2007).   To establish a claim for false arrest or false imprisonment, a plaintiff must demonstrate that the defendant lacked probable cause. *See*

---

[5] The court observed that a separate Penal Code provision (§ 37.08) prohibits conveying false information to law enforcement; however, it ultimately expressed no opinion as to its applicability on the facts presented. *Id.*

*Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of false arrest, unreasonable seizure, and false imprisonment also require a showing of no probable cause."); *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988) ("Claims of false arrest, false imprisonment, and malicious prosecution involve the guarantees of the [F]ourth and [F]ourteenth amendments when the individual complains of an arrest, detention, and prosecution without probable cause."). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Haggerty v. Texas S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)); *see also United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001) (explaining that probable cause's "fair probability" requires more than a bare suspicion but less than a preponderance of evidence).

Because false imprisonment is detention without process, "false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389. Accordingly, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (quoting *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994)). This process, however, provides no protection where either (1) the warrant affidavit was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable," (*Malley v. Briggs*, 475 U.S. 335, 344–45 (1986)), or (2) the officer "deliberately or recklessly provide[d] false, material information for use in an affidavit" or "[made] knowing and intentional omissions that result in a warrant being issued without probable cause."

9

*Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc) (citing *Franks v. Delaware*, 438 U.S. 154 (1978) (citations omitted)).

Here, Welsh acknowledges that the state trial judge and a grand jury determined that probable cause existed to arrest and detain Welsh. Questionnaire 2–3. He nevertheless contends the process was "tainted" by Defendant Hester's "reckless misstatement of law." *Id.* As such, the relevant inquiry becomes whether Defendant Hester recklessly provided false information that rendered the warrant invalid. *Id.*

Initially, the Court notes that Welsh believes his detention was unlawful because he was later acquitted. "The Constitution[, however,] does not guarantee that only the guilty will be arrested." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). And "the mere fact that plaintiff ultimately was acquitted by [an appellate court] does not show that there was no probable cause to charge or arrest him." *Griffith v. Pamerleau*, Civil No. SA-14-CV-591-PM, 2015 WL 2446003, at *3 n.55 (W.D. Tex. May 20, 2015) (citing *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)).

The record before the appellate court demonstrated that: (1) TCCC video evidence showed TCCC staff did not injure Welsh in any way and, for that matter, that he had no visible injuries; (2) TCCC security director Woods saw Welsh "punching himself in the face;" and (3) a nurse testified that Welsh's injuries were self-inflicted. *Welsh*, 570 S.W.3d at 964. The authenticated records submitted by Defendants to this Court show that Defendant Hester's affidavit in support of the arrest warrant reads as follows: "I have good reason to believe and do believe that LONNIE KADE WELSH, hereinafter called the accused, did commit the offense of TAMPER FABRICATE PHYSICAL EVID W/INTENT TO IMPAIR, on the 13th day of November, 2017, in Lamb County, Texas." Moreover, the factual basis for Defendant Hester's complaint generally tracks the facts contained in the appellate court record and provided by independent sources:

> LONNIE KADE WELSH, Defendant did then and there . . . knowing that an investigation was pending and in progress, to-wit: an investigation into the Defendant's refusal to return to his cell and the use of force used against the Defendant to cause his return to his cell on November 13, 2017, intentionally and knowingly make and present physical evidence, to-wit: physical injuries on the Defendant's body, caused by the Defendant striking himself with the Defendant's hand and by the Defendant striking himself with an unknown object, with knowledge of the physical evidence's falsity and with intent to affect the course or outcome of the investigation[.]

Per the authenticated records, after reviewing these statements the state judge determined that probable cause existed for the issuance of a warrant for arrest and detention. The same factual background was provided to the grand jury, which similarly determined that probable cause existed.

Accordingly, although Welsh complains that Defendant Hester "reckless[ly]" misstated the law, he also provided to the judge and the grand jury the underlying factual basis for his mistaken conclusion of law. Thus, the "facts supporting an arrest [were] placed before an independent intermediary" and "the intermediary's decision [therefore] breaks the chain of causation for false arrest." *See Deville*, 567 F.3d at 170 (citation omitted); *see also Lock v. Torres*, 694 F. App'x 960, 964 (5th Cir. 2017) (holding that defendants were entitled to qualified immunity from unlawful arrest claim under the independent intermediary doctrine). Welsh pleads no facts to overcome the judge and grand jury's determination of probable cause, i.e., an affidavit so lacking in probable cause it rendered official belief in its existence unreasonable, or that Defendant Hester recklessly provided false, material information or made knowing and intentional omissions causing the warrant to lack probable cause (*see Melton*, 875 F.3d at 264), and he therefore cannot state a claim for false arrest. *See, e.g., Finley v. Griffin*, CIVIL ACTION NO. 5:17-CV-136-BQ, 2018 WL 10626249, at *3–4 (N.D. Tex. Apr. 12, 2018) (dismissing at screening false arrest claim where state judge determined there was probable cause for arrest and noting that probable cause was not

nullified simply because the charges were later dropped); *Berry v. Bennett*, No. 3:10–CV–2160–D (BK), 2010 WL 5464879, at *3–4 (N.D. Tex. Dec. 6, 2010) (recommending dismissal of plaintiff's false arrest claim against arresting officer because plaintiff appeared before independent intermediary and was indicted by a grand jury); *Escamilla v. Dall. Police Dep't*, No. 3-01-CV-1159-G, 2001 WL 1338302, at *3 (N.D. Tex. Oct. 18, 2001) (recommending dismissal of plaintiff's false arrest claim because grand jury's indictment insulated the arresting officer from a false arrest claim).

### 2. *Due process*

Welsh argues in his Complaint that he was deprived of due process primarily because he is innocent of the charged offense. Second Am. Compl. 3, 13. Welsh additionally claims that Defendants violated his procedural and substantive due process rights in other ways. First, he contends Lamb County violated his procedural due process rights because it "prevent[ed] [him] from presenting both capacity evidence and evidence of his insanity." Questionnaire 5. Second, he claims Defendants Lamb County, the City of Littlefield, and Hester violated his due process rights "by manufacturing a criminal charge" because the underlying "facts of the case do [not] comport with the law" of his convicted charge. *Id.* at 1. Next, Welsh claims that Defendants "Say and Redman conspired with a Chris Woods to dispose of physical evidence of a video tape that continuously videoed Welsh while in an administrative cell after the physical assault by Woods' staff," although he does not specify how this alleged action violated his constitutional rights. Second Am. Compl. 7. Fourth, Welsh asserts that Defendants "Say and Redman relied on perjured testimony for [his] conviction," which "violated [his] procedural and substantive rights to fundamental fairness and the rights to a fair trial." Questionnaire 14. Finally, he claims Defendant

Redman violated his procedural and substantive due process rights to a fair trial when he introduced into evidence Welsh's prior conviction for indecency with a child. *Id.* at 15.

The Fourteenth Amendment protects against deprivations of liberty accomplished "without due process of law." *Baker*, 443 U.S. at 142. The Due Process Clause encompasses both procedural and substantive rights. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). Procedural due process guarantees a plaintiff the right to notice and an opportunity to be heard in a meaningful and timely manner. *See Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012). The substantive due process guarantee protects an individual from arbitrary action that shocks the conscience. *See Lewis*, 523 U.S. at 847.

As to Welsh's initial contention, the fact that his conviction was later overturned again does not in and of itself establish a violation of his due process rights; his "innocence of the charge . . . is largely irrelevant to his claim of deprivation of liberty without due process of law" because "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker*, 443 U.S. at 145. "The ultimate determination of . . . claims of innocence is placed in the hands of the judge and the jury." *Id.* at 146. Thus, the Court turns next to Welsh's allegation that Defendant Lamb County violated his procedural due process rights because it "prevent[ed] [him] from presenting both capacity evidence and evidence of his insanity." Questionnaire 5.

According to authenticated records, the state trial court found Welsh competent to stand trial in a pretrial hearing on March 8, 2018. At the hearing, the following exchange took place:

> The court:     Has any court ever found that you are not competent to stand trial?
> Mr. Welsh:    Well, Your Honor, I'm currently civilly committed. Underneath the terms of the behavioral abnormality, I have volition with emotion control issues. And that's defined by law, I just found out, beyond a reasonable doubt—
> The court:     Okay. But that has nothing to do with competency.
>                     . . .

| | |
|---|---|
| Mr. Welsh: | Like I said, Judge, the law is ambiguous, Your Honor. |
| The court: | Well, the law is not ambiguous at all as to whether you are competent or not competent. |
| | . . . |
| The court: | Has any court ever determined that you are not competent? |
| Mr. Welsh: | Your Honor, I am civilly committed in the State of Texas— |
| | . . . |
| The court: | Mr. Shaw,[6] do you have any reason to believe that Mr. Welsh is not competent? |
| Mr. Shaw: | Well, just based upon what he is presenting to the Court in that the civil commitment has, as far as he's concerned, has to do with behavior as opposed to the competency, that it has to do with the understanding mentally as to how he functions. My interactions with him, I have no question that he understands what he's been charged with and the procedures that the Court would be following. |
| | . . . |
| The court: | Mr. Welsh, you understand what you are charged with? |
| | . . . |
| Mr. Welsh: | I'm charged with tampering with evidence, Your Honor, 37.09(d)(1). |
| The court: | Okay. And so what do you understand that to be? What are the allegations against you? |
| Mr. Welsh: | Is that, okay, during a pending and in-progress investigation I tampered with evidence, namely my body they said. |
| The court: | Okay. And how does it allege that you tampered with your body? |
| Mr. Welsh: | They say I physically struck myself. |
| The court: | Okay. And so Mr. Shaw was appointed to represent you; is that correct? |
| Mr. Welsh: | Yes, sir. |
| The court: | Okay. And you've had discussions with Mr. Shaw? |
| Mr. Welsh: | Yes, sir. |
| The court: | Okay. And have you understood the information that he provided to you? |
| Mr. Welsh: | Yes, sir, Your Honor. |
| The court: | Okay. So you think that you were able to consult with him and understand what he was telling you? |
| Mr. Welsh: | Yes, Your Honor. |
| | . . . |
| The court: | Has any court ever said that you are not competent to the—so that you were not able to go to trial? |
| Mr. Welsh: | Again, Your Honor, I would have to say that the terms of my behavior— |
| The court: | Okay. |
| Mr. Welsh: | —abnormality does state that I am incompetent to testify. They have me civilly committed. |
| The court: | Okay. All right. Has any—have you ever—has any court ever denied taking you to trial? |
| Mr. Welsh: | Since I have been civilly committed, Your Honor? |
| The court: | At any time in your life? |

---

[6] According to authenticated records, Mr. Shaw was Welsh's appointed counsel.

Mr. Welsh:     No, sir.

After this exchange, the court proceeded to question Welsh about his desire to represent himself at trial. Ultimately, the court determined that Welsh was both competent to stand trial and sufficiently understood the risks in choosing to represent himself, although the court reserved ruling on the pro se issue for a later date.

The state court entertained Welsh's competency argument at another pretrial hearing on April 11, 2018. At this hearing, Welsh again argued that because he was found beyond a reasonable doubt to "have an immutable condition that leaves [him] with a . . . [predisposition], not only to commit crimes, but as stated by every commitment official, that [he] . . . [has] an inability to comprehend reality or respond to it rationally." Welsh proceeded to cite various constitutional amendments, United States Supreme Court precedent, and Texas statutory law. He concluded by saying that "legally [he was] found incompetent and insane by the Supreme Court." At this point, the judge interjected, saying, "Now I disagree. You were committed under Title 11 of the [Texas] Health and Safety Code, Chapter 841 . . . ." The court continued, "[T]he Court has had quite a few encounters with you and I found you neither incompetent or insane . . . [and] I don't find that there's any court that's ever made the determination that you are either incompetent or insane and so that motion is denied." Thus, the court again determined that Welsh was competent to stand trial.

With these pretrial hearings in mind, the Court cannot conclude that Welsh sufficiently pleads a procedural due process claim related to his competency. "A criminal defendant may not be tried unless he is competent." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). A defendant is competent to stand trial when he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational

understanding" and has "a rational as well as factual understanding of the proceedings." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings." *Godinez*, 509 U.S. at 401 n.12.

The Due Process Clause of the Fourteenth Amendment provides a procedural right to a competency hearing in state prosecutions "whenever the facts or events presented to the trial court raise a bona fide doubt as to the defendant's competency." *Reese v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir. 1979); *accord Pate*, 383 U.S. at 384–85. Here, Welsh not only received a hearing, but received *two* hearings, and he was able to present his argument to the court on both occasions. Welsh's claim is more accurately described as expressing dissatisfaction with the *standard for competency* as stated under Texas law, instead of pleading facts showing that he could have successfully demonstrated a lack of sanity under the correct standard. As evidenced by the pretrial record, the judge properly focused the inquiry on Welsh's mental capacity (*Godinez*, 509 U.S. at 401 n.12), and diligently sought to determine whether Welsh had the "ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings." *See Dusky*, 362 U.S. at 402. At the hearing, Welsh himself admitted that he had never been found incompetent to stand trial and he proved to be competent when he affirmatively agreed that he understood the nature of the charges and the information provided to him by his counsel.[7] Procedural due process requires that the procedure is "adequate," (*United States v. Flores-Martinez*, 677 F.3d 699, 707 (5th Cir. 2012)), and Welsh pleads no facts to establish that either of his two competency hearings were anything but adequate. Accordingly,

---

[7] This is especially so where the state court also found Welsh competent to represent himself at trial. *See Haden v. United States*, No. 3:05-CR-0109-P (01), 2009 WL 4060982, at *4 (N.D. Tex. Nov. 24, 2009) (explaining that a court's competency determination as it relates to the ability to proceed pro se "invokes a higher standard" than competency to stand trial).

the undersigned recommends that the district judge dismiss Welsh's procedural due process claim as to his competency hearings.

Welsh's next assertion—that Defendants Lamb County, the City of Littlefield, and Hester violated his due process rights because the underlying "facts of the case do [not] comport with the law" under his convicted charge—likewise fails. *See* Questionnaire 1. The Court interprets this claim as alleging a due process violation because Defendants lacked probable cause to prosecute him for the charged offense. *See* Second Am. Compl. 4, 13 (alleging violation of due process rights in part because he was confined without probable cause); Questionnaire 1 (alleging that "[t]he facts of the case do [n]ot comport with the law . . ."). Even assuming Defendants lacked probable cause, the United States Supreme Court has "rejected the contention that the initiation of criminal proceedings without probable cause is a violation of substantive due process." *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)) (holding that a plaintiff "must look to the explicit text of the Fourth Amendment as a source of protection for the 'particular sort of government behavior' at issue").

And as to procedural due process, Welsh fails to sufficiently articulate an alleged violation beyond a conclusory assertion that his rights were violated because the "facts of the case do [not] comport with the law." *See* Questionnaire 1. Welsh seemingly believes that because his conviction was later overturned, his procedural due process rights *must* have been violated during his initial prosecution and subsequent conviction. Welsh's ambiguous and conclusory rendition of constitutional buzzwords, however, cannot support a § 1983 claim. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir. 2005) (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims); *Richards v. Johnson*, 115 F. App'x 677, 678 (5th Cir. 2004) (same); *Lloyd v. Jones*, CASE NO. 9:18-CV-211, 2019 WL 4786874, at *6 (E.D. Tex. Sept. 10,

2019) (quoting *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010))

("The Court does not accept as true 'conclusory allegations, unwarranted factual inferences, or

legal conclusions.'"), *R. & R. adopted by* 2019 WL 4747850 (E.D. Tex. Sept. 27, 2019).   In

evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true,

but do not credit conclusory allegations or assertions that merely restate the legal elements of a

claim. *Chhim*, 836 F.3d at 469.

 Welsh additionally alleges that Defendants "Say and Redman conspired with a Chris

Woods to dispose of physical evidence of a video tape that continuously videoed Welsh while in

an administrative sell [sic] after the physical assault by Woods' staff," although he does not specify

how this alleged action violated his constitutional rights.   Second Am. Compl. 7.   In response to

the Court's questionnaire, Welsh chiefly complains that the trial "judge would not honor [his]

subpoena [of the video] because he appointed [a defense attorney] which [Welsh] did not want

from the beginning."  Questionnaire 16.  He then complains that his attorney would not subpoena

the video and when he spoke to the prosecutor about it, she informed him that she was told there

was no video.  *Id.*  He conclusorily alleges that Defendant Redman had the footage destroyed.  *Id.*

at 16–17.  The Court recommends dismissal of this allegation—to the extent it constitutes a legal

claim—because "conclusory allegations, unwarranted factual inferences, or legal conclusions"

cannot support a § 1983 claim. *See In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210;

*Sias*, 146 F. App'x at 720.

 To the extent Welsh alleges that Defendants Say and Redman violated his substantive and

procedural due process rights at trial by allegedly relying on perjured testimony, Welsh's claim

against these Defendants in their individual capacity cannot succeed.[8]  Immunity from suit is a threshold question, which the Court must "resolve[] as early in the proceedings as possible." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).  Defendants Say and Redman are criminal prosecutors and they accordingly "enjoy absolute immunity from claims for damages asserted under § 1983 for actions taken in the presentation of the state's case." *Id.* at 285.  This "immunity applies to the prosecutor's actions in initiating the prosecution and in carrying the case through the judicial process" and "applies even if the prosecutor is accused of knowingly using perjured testimony." *Id.*  And where Welsh "alleges no facts . . . that would destroy [their] absolute immunity," his claims may be properly dismissed at screening. *Id.*

The same holds true for Welsh's claim that Defendant Redman violated his substantive and procedural due process rights to a fair trial when she introduced into evidence Welsh's prior conviction.  Accordingly, the undersigned recommends that the district judge dismiss with prejudice Welsh's due process claims against Defendants Redman and Say in their individual capacities. *See Epps v. City of Dallas Police Dept*, Civil Action No. 3:15-CV-3881-L, 2016 WL 1642946, at *1 (N.D. Tex. Apr. 26, 2016) (dismissing at screening claims against district attorney because she was absolutely immune under section 1983).

In sum, the undersigned recommends that the district judge dismiss Count I and all ancillary allegations therein because Welsh fails to plead viable constitutional violations.

---

[8] What is more, in the event that Welsh intended to name Defendant Hester to this claim based on his purported perjurious testimony, Welsh again fails to allege a constitutional violation because as a trial witness, Defendant Hester has absolute immunity. *See Enlow v. Tishomingo Cty.*, 962 F.2d 501, 511 (5th Cir. 1992) ("Witnesses, including police officers, are also shielded by absolute immunity from liability for their allegedly perjurious testimony.").

**D. Welsh has not stated a cognizable constitutional violation based on his unreasonable seizure claim (Count II).**

Welsh avers that Defendants Lamb County, the City of Littlefield, and Hester violated his Fourth Amendment right to be free from unreasonable seizure without probable cause by confining him in the Lamb County Jail from November 28, 2017 through June 26, 2018, and asking the State to confine him in TDCJ following conviction from June 26, 2018, through August 6, 2019. Second Am. Coml. 3–4, 13.

To establish a claim for unreasonable seizure, Welsh must demonstrate that Defendants did not have probable cause. *See Brown*, 243 F.3d at 189 ("The 'constitutional torts' of false arrest, unreasonable seizure, and false imprisonment also require a showing of no probable cause."). Having concluded above that Welsh pleads no facts to overcome the judge and grand jury's determination of probable cause, his Fourth Amendment claim should likewise be dismissed. *Dupard v. Harper*, Civil Action No. 14-0050, 2014 WL 4930468, at *7 (E.D. La. Oct. 1, 2014) (dismissing at screening Fourth Amendment claim because officers had probable cause).

**E. Welsh does not plead a constitutional violation with respect to Counts III, VI, and VII, i.e., selective prosecution and equal protection violations.**

Welsh claims that Defendants Lamb County, the City of Littlefield, and Hester selectively prosecuted him because "defendants do not prosecute individual[s] who commit similar offenses as Welsh who are mentally ill." Questionnaire 6; *see also* Second Am. Compl. 14. According to Welsh, these Defendants engaged in "discrimination within the law by only prosecuting the SVP insanity class" as "a policy, practice, or custom of [] Lamb County." Second Am. Compl. 4. Similarly, in counts six and seven Welsh alleges that Defendants Lamb County, the City of Littlefield, Say, Redman, and Hester violated his right to equal protection by prosecuting him. *Id.* at 15–16; Questionnaire 31.

20

A selective prosecution claim stems from the Fourteenth Amendment right to equal protection. *Shipman v. Sowell*, 766 F. App'x 20, 26 (5th Cir. 2019). "To prevail on a selective prosecution challenge, a [party] must first make a *prima facie* showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not." *United States v. Greene*, 697 F.2d 1229, 1234 (5th Cir. 1983). Second, the plaintiff "must then demonstrate that the government's discriminatory selection of him for prosecution has been invidious or in bad faith in that it rests upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Id.* This second prong is crucial to a selective prosecution claim because "the mere exercise of some selectivity by the government in instituting prosecutions is not itself a constitutional violation." *Id.* Indeed, "the decision to prosecute one person rather than another is one left to executive discretion." *Id.* at 1235.

Even taking Welsh's assertions as true and assuming arguendo that Welsh could establish that similarly situated plaintiffs—other SVPs committing the same crime—have not been prosecuted (Questionnaire 6), Welsh has failed to allege that Defendants prosecuted him in bad faith resting upon an impermissible consideration. According to Welsh, he is a member of a protected class because he is an SVP. Second Am. Compl. 4. Yet, SVPs do not constitute a protected class. *See e.g.*, *Grohs v. Fratalone*, Civ. No. 137870KMMAIL, 2015 WL 6122147, at *5 (D.N.J. Oct. 16, 2015) ("Persons designated as sexually violent predators are not a protected class."); *see also Allen v. Mayberg*, No. 1:06-CV-01801-BLW-LMB, 2013 WL 3992016, at *7 (E.D. Cal. Aug. 1, 2013) (stating that "SVPs are not a suspect or quasi-suspect class for Equal Protection purposes"); *Hawkins v. Ahlin*, No. 12–0626, 2013 WL 3475187, at *6 n.7 (C.D. Cal.

July 10, 2013) (noting the law does not support a finding that civilly committed SVPs qualify for protection as a protected class).[9] And he identifies no other allegedly protected characteristic.

Further, Welsh's conclusory allegation that Defendants acted with a discriminatory purpose does not establish a violation of his constitutional rights. *See Sias*, 146 F. App'x at 720 (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims); *Shackelford v. State Bar of Tex.*, No. 3:19-CV-1075-M-BN, 2019 WL 4418277, at *3 (N.D. Tex. Aug. 20, 2019) (stating that "while a court must accept all of a plaintiff's allegations as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation'"), *R. & R. adopted by* 2019 WL 4413288 (N.D. Tex. Sept. 16, 2019). Welsh's selective prosecution claim therefore falls short.

Thus, the undersigned recommends that the district judge dismiss Welsh's equal protection and selective prosecution claims.[10] *See Shipman*, 766 F. App'x at 26 (affirming grant of motion to dismiss where plaintiff did "not articulate sufficient facts that, taken as true, plausibly establish a selective-prosecution claim . . . [n]or [did] he allege any facts that, taken as true, would establish a causal connection between [the defendant's] actions and [the plaintiff's] characterization of [the defendant's] motives"); *Longmire v. Starr*, No. 3:05-CV-0315-M, 2005 WL 2990908, at *2–3 (N.D. Tex. Aug. 29, 2005) (recommending dismissal at screening of equal protection claim where plaintiff's allegations did not establish the necessary discriminatory purpose); *Reed v. Gonzalez*, No. Civ.A. 499CV603P, 2001 WL 640788, at *4 n.20 (N.D. Tex. June 8, 2001) (dismissing at

---

[9] Welsh alleges that Defendants Say, Redman, and Hester said "on and off the record that they do not care that employees at the TCCC assaulted [him]" and that because Welsh is "a member of the Sexually Violent Predator class of Civilly Committed individuals . . . the TCCC employees can do anything they want to a sex offender as long as they don't kill him." Second Am. Compl. 6–7; *see also* Questionnaire 12. Such statements, even if true, have no material bearing on whether prosecutors chose to selectively prosecute Welsh while not prosecuting other SVPs.

[10] To the extent that Welsh intended to assert a malicious prosecution claim, (Second Am. Compl. 5 (alleging he was "maliciously singled out for criminal prosecution . . .")), that claim similarly fails because there is no "freestanding constitutional right to be free from malicious prosecution." *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003).

screening prisoner's selective prosecution claim as "a type of equal protection claim" because his "allegation that he was prosecuted and others were not [did] not" prove that the defendants were motivated by improper considerations).

### F. Welsh's Count IV claim that Defendants subjected him to unconstitutional punishment should be dismissed.

Welsh next contends that he was "unconstitutional [sic] confined . . . by cruel and unusual means" because he was "punished for a crime he did not commit and/or was unconstitutionally punished while he was mentally insane," which "was a deliberate decision from the County and City policy makers . . . ." Second Am. Compl. 6. Stated differently, Welsh alleges that he was unconstitutionally punished in two ways: first, because he was convicted of a crime he did not commit, and second, because he was convicted while allegedly insane. He asserts this claim against Defendant Lamb County through its "principle [sic] agents and policy makers" Defendants Say and Redman, and against Defendant City of Littlefield via Defendants Hester and the Mayor. *Id.*

Addressing Welsh's first allegation, he in essence complains that the jury unlawfully convicted him because an appellate court later determined the jury's factual findings were improperly applied to the law, thus leading to a wrongful conviction—the Court has already considered, and rejected, this assertion. Moreover, to the extent Welsh attempts to restate the claim as an Eighth Amendment violation, it similarly fails. Throughout his Complaint Welsh challenges Defendants' alleged conduct that happened *pre-conviction*—"Eighth Amendment claims relate[d] to actions or conduct which occurred prior to . . . conviction . . . do not implicate the Eighth Amendment and its protections." *Good v. City of Irving*, Civil Action No. 3:06-CV-2133-K, 2009 WL 804701, at *6 (N.D. Tex. Mar. 26, 2009). What is more, to the extent Welsh alleges that this violated his Fourteenth Amendment right "to be free from punishment" (Second Am. Compl. 14),

the Court has already determined that the complained-of conduct does not rise to a claim of constitutional dimension.

Welsh's alternative theory, violation of his Eighth Amendment rights because he was convicted while allegedly insane, similarly fails. First, just as Welsh's pre-conviction allegations failed to raise an Eighth Amendment claim in relation to his conviction while innocent of the charged offense, his claim that he was convicted while allegedly insane likewise does not raise an Eighth Amendment claim because he only complains of pre-trial conduct. *See id.*

Criminal defendants have a "well-established" substantive due process right "not to be tried or convicted while incompetent to stand trial." *Medina v. United States*, 505 U.S. 437, 449 (1992) (citing *Drope v. Missouri*, 420 U.S. 162, 172 (1975) and *Pate*, 383 U.S. at 375). In a federal habeas proceeding, the court must presume that the state court's competency finding is correct. *DeVille v. Whitley*, 21 F.3d 654, 656 (5th Cir. 1994). A habeas petitioner bears an "extremely heavy" threshold burden to establish sufficient facts to "positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to [his] mental capacity . . . to meaningfully participate and cooperate with counsel during a criminal trial." *Bruce v. Estelle*, 536 F.2d 1051, 1058–59 (5th Cir. 1976) (citation omitted); *see also Carter v. Johnson*, 131 F.3d 452, 460–61 (5th Cir. 1997). The issue before the Court at present, however, is whether Defendants violated Welsh's constitutional rights in a § 1983 context. Accordingly, this claim amounts to little more than an improper collateral attack on a state trial court factual finding. *See Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) ("Absent specific law otherwise providing, . . . federal district courts lack jurisdiction to entertain collateral attacks on state court judgments."). If the state trial court erred in its competency determination, then Welsh's "remedy was to seek review from a state

appellate court, . . . not a federal civil rights lawsuit filed in this Court." *Hicks v. Brysch*, 989 F.

Supp. 797, 812 (W.D. Tex. 1997).

### G. The District Judge should dismiss Welsh's claims based on the alleged lack of access to courts and due process violations (Count V).

Welsh avers that he accused Leslie Dimwiddie, Dustin Tijerina, Arnulfo Hernandez, Jr.,

John Cochran, Adam Peirce, Michael Searcy, and "Various [TCCC] employees" of several

violations, which Defendants Lamb County, the City of Littlefield, and Hester "refus[ed] to

process." Second Am. Compl. 7–11. According to Welsh, this nonfeasance violated his right to

access courts and his procedural and substantive due process rights. *Id.*; Questionnaire 32, 36.

Detainees have a constitutional right of meaningful access to the courts. *See Jones v.

Greninger*, 188 F.3d 322, 325 (5th Cir. 1999); *Buckenburger v. Strain*, Civil Action No. 06-5670,

2006 WL 4503353, at *3 (E.D. La. Oct. 20, 2006). The right of access, however, is not unlimited.

*See Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Jones*, 188 F.3d at 325. To prevail on his claim,

Welsh must show that "he lost an actionable claim or was prevented from presenting such a claim

because of the alleged denial." *Clark v. Johnson Cty. Jail*, No. 3:16-CV-2087-D-BH, 2017 WL

979060, at *3 (N.D. Tex. Feb. 10, 2017) (citing *Lewis*, 518 U.S. at 356), *R. & R. adopted by* 2017

WL 976951 (N.D. Tex. Mar. 13, 2017); *see also Carter v. Lowndes Cty.*, 89 F. App'x 439, 442

(5th Cir. 2004). Welsh must demonstrate an actual injury in the form of prejudice by "identify[ing]

a nonfrivolous, arguable underlying claim that he has been unable to pursue." *McGarrah v. Alford*,

No. 3:14-CV-1125-N, 2014 WL 11633696, at *1 (N.D. Tex. Apr. 8, 2014) (citing *Christopher v.

Harbury*, 536 U.S. 403, 415 (2002)), *R. & R. adopted by* 2014 WL 11633697 (N.D. Tex. May 15,

2014), *appeal dismissed by* 783 F.3d 584 (5th Cir. 2015).

This claim is easily resolved—Welsh "does not have a constitutional right to have someone

criminally prosecuted." *Back v. TDCJ-CID*, CIVIL ACTION NO. 6:16cv15, 2016 WL 7971446,

at *4 (E.D. Tex. Apr. 5, 2016) (citing *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990)), *R. & R. adopted by* 2016 WL 3033510 (E.D. Tex. May 27, 2016), *aff'd sub nom. Back v. Texas Dep't of Criminal Justice Corr. Insts. Div.*, 716 F. App'x 255 (5th Cir. 2017). Accordingly, Welsh fails to state a viable access to courts claim in this regard. *See Pagonis v. Norvel*, No. 2:15-CV-0206, 2015 WL 4619880, at *2 (N.D. Tex. July 30, 2015) (dismissing at screening and concluding that prisoner's claim was frivolous because he did "not have a judicially cognizable interest in the criminal prosecution of another person") (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

Similarly, Welsh complains of three other instances where he was allegedly denied access to courts because Defendants "refus[ed] to process" his criminal complaints. Second Am. Compl. 9–11. Because Welsh does not have a constitutional right to another person's criminal prosecution, these allegations likewise do not rise to the level of a cognizable § 1983 claim. *See Pagonis*, 2015 WL 4619880, at *2; *United States v. Sparks*, 2 F.3d 574, 580 (5th Cir. 1993) ("Generally, the government has broad discretion in determining who to prosecute.").

The undersigned therefore recommends that the District Judge dismiss as frivolous Welsh's access to courts and due process claims (Count V).

## H. The District Judge should dismiss Welsh's policy claims.

Welsh attributes the foregoing conduct and actions to Lamb County through its policy makers and principal agents Defendants Say and Redman, and to the City of Littlefield through its policy makers and principal agents Defendant Hester and the Mayor. Second Am. Compl. 2, 4–6, 8–11; Questionnaire 2, 4, 6, 9, 11, 20–21, 24, 27, 30, 34–35. The undersigned recommends that the District Judge dismiss all claims against Lamb County and the City of Littlefield.

To the extent Welsh sues Lamb County and the City of Littlefield, Welsh must not only sufficiently plead cognizable constitutional violations, but he must also establish that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (emphasis omitted); *see also Patin v. Richard*, Civil No. 6:10-0650, 2011 WL 9118, at *8 (W.D. La. Jan. 3, 2011) (concluding the municipality claims failed because even if the plaintiff "alleged an official policy, custom or procedure," he failed to state an "underlying constitutional violation for which the municipal defendant . . . can be derivatively liable on the basis of its policies or customs"). In other words, Welsh must "show that the municipal action was taken with the requisite degree of culpability" and a "direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404. And "the burden for establishing municipal liability under § 1983 is stringent." *Good*, 2009 WL 804701, at *8. Welsh must establish: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). The principal agent or policy maker must have actual or constructive knowledge because "[a]ctions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy . . . ." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984).

Consequently, to succeed on a claim against Lamb County or the City of Littlefield, Welsh must first establish an underlying constitutional violation and then show either a "policy statement, ordinance, regulation or decision," or alternatively, "persistent, widespread practice" and "actual or constructive knowledge of the governing body or person(s) to whom official policymaking authority has been delegated by the governing body." *Good*, 2009 WL 804701, at *6; *accord*

*Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017). Welsh has not pleaded facts showing any underlying constitutional violation. The Court therefore recommends dismissal of Welsh's claims against Lamb County and the City of Littlefield.

### III.    Recommendation

For these reasons, the undersigned recommends that the United States District Court dismiss with prejudice all claims asserted against all Defendants under 28 U.S.C. § 1915A for failure to state a claim, except as otherwise noted herein.

### IV.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: December **16**, 2020.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE