IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

LONNIE KADE WELSH, §
 §
 Plaintiff, §
 §
v. § CIVIL ACTION NO. 5:20-CV-077-BQ
 §
LAMB COUNTY, TEXAS, §
 §
 §
 Defendant. §

## **REPORT AND RECOMMENDATION**

Proceeding pro se and *in forma pauperis*, Lonnie Kade Welsh filed this action under 42

U.S.C. § 1983 alleging violations of his constitutional rights in connection with state criminal

charges initiated and pursued against him. 2d Am. Compl. 2–16, ECF No. 19; *see* ECF No. 1.

Welsh seeks monetary damages for his alleged injuries. 2d Am. Compl. 16–23.

Welsh filed his original Complaint on March 30, 2020. ECF No. 1. The United States

District Judge granted Welsh's Application to Proceed *in Forma Pauperis* (IFP) and transferred

this case to the undersigned United States Magistrate Judge to conduct preliminary screening under

28 U.S.C. § 1915. ECF Nos. 2, 8. The undersigned thereafter reviewed Welsh's operative

Complaint[1] and authenticated records provided by Defendants and ordered Welsh to complete a

questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976), which he timely

completed and returned. ECF Nos. 20, 23. On December 16, 2020, the undersigned entered

findings, conclusions, and recommendations (FCR) in the instant case recommending that the

district judge dismiss all of Welsh's claims. ECF No. 24. The Honorable Sam R. Cummings,

Senior United States District Judge, adopted the FCR in full and ordered Welsh's case be dismissed

---

[1] Welsh filed his First Amended Complaint on June 16, 2020 (ECF No. 13), and later filed his Second Amended Complaint on July 23, 2020. ECF No. 19.

with prejudice. ECF Nos. 33, 34. On January 8, 2024, the Fifth Circuit vacated the Court's judgment and remanded Welsh's case to this Court to consider whether Welsh's suit is barred by res judicata and, if not, whether the undersigned "properly identified and resolved any factual conflicts between Welsh's complaint and the *Martinez* report." *Welsh v. Lamb Cnty.*, No. 22-10311, 2024 WL 81580, at *3 (5th Cir. Jan. 8, 2024).

Not all parties have consented to proceed before the undersigned magistrate judge. In accordance with the order of transfer, the undersigned makes the following report and recommendation (R&R) to the United States District Judge, recommending he dismiss all claims herein as barred by res judicata or claim splitting, save the claims against Lamb County, which should be dismissed on the merits.

## I.    **Background**

On December 16, 2020, the undersigned entered an FCR in the instant case recommending that the district judge dismiss all Welsh's claims. ECF No. 24. Judge Cummings adopted the FCR in full and ordered Welsh's case be dismissed with prejudice. ECF Nos. 33, 34. Welsh then filed a motion under Federal Rule of Civil Procedure 59(e), asking the Court to reconsider its dismissal. ECF No. 35. Judge Cummings denied that motion. ECF No. 36.

Thereafter, Welsh appealed the Court's dismissal and denial of the motion to alter judgment. ECF No. 38. On January 8, 2024, the Fifth Circuit vacated the Court's judgment and remanded Welsh's case to this Court for consideration of the issues identified in its opinion, which are set out below. *Welsh*, 2024 WL 81580, at *3.

The Fifth Circuit concluded that Welsh is a frequent filer and has several cases in the Northern District of Texas that are pending[2] or have already concluded.[3] *Id.* at *2. In addition, the Fifth Circuit noted Welsh's propensity to "raise[] similar claims and frequently name[] the same defendants." *Id.* Comparable to the instant case, the Fifth Circuit pointed out that in case number 5:18-cv-20, Welsh filed claims against "Lamb County, Scott Say, Ricki Redman, Ross Hester, and the City of Littlefield . . . assert[ing] that his constitutional rights were violated during the investigation and prosecution stemming from" Texas Civil Commitment Center (TCCC) employees' alleged use of force on November 13, 2017 (November UOF). *Id.* Because of the overlap between the two cases, the Fifth Circuit held that it was error for this Court to adjudicate Welsh's claims on the merits without first considering whether such claims are barred by res judicata and the successive claim doctrine.[4] *Id.*

The Fifth Circuit also discussed district courts' practice of ordering authenticated records to assist in the screening process of *in forma pauperis* complaints, resolving that "[t]hese documents form a *Martinez* report." *Id.* The Fifth Circuit concluded that although the district court must accept as true the facts in a plaintiff's complaint when they conflict with those within

---

[2] Welsh's pending cases include: (1) 5:20-cv-24; (2) 5:20-cv-77 (the instant case); (3) 5:22-cv-183; (4) 5:22-cv-237; (5) 5:24-cv-69; (6) 5:24-cv-73; and (7) 5:24-cv-74. After the Fifth Circuit issued its opinion, the Court also closed case number 5:18-cv-20 pending resolution of Welsh's appeal. Thus, there is not a final judgment as to all claims in 5:18-cv-20, but it is currently closed.

[3] Welsh's resolved cases include: (1) 5:17-cv-83; (2) 5:17-cv-95; (3) 5:17-cv-173; (4) 5:19-cv-255; (5) 5:21-cv-116; (6) 5:21-cv-117; (7) 5:21-cv-118; (8) 5:21-cv-156; (9) 5:22-cv-98; (10) 5:23-cv-28; (11) 5:23-cv-53; and (12) 5:23-cv-158.

[4] The Fifth Circuit noted a district court's ability to sua sponte dismiss on res judicata grounds under either Rule 8 or § 1915(d) (despite its classification as an affirmative defense) "in the interest of judicial economy where both actions were brought before the same court." *Welsh*, 2024 WL 81580, at *2 n.10 (citation omitted); *see, e.g.*, *TQ Delta, LLC v. CommScope Holding Co.*, 657 F. Supp. 3d 892, 898 (E.D. Tex. 2023) ("[R]es judicata encompasses two separate but linked preclusive doctrines: (1) . . . claim preclusion and (2) collateral estoppel or issue preclusion." (quoting *Dotson v. Atl. Specialty Ins. Co.*, 24 F.4th 999, 1002 (5th Cir. 2022))). In addition, it also appears the doctrine of claim splitting would preclude some of Welsh's asserted claims not yet barred by res judicata. *See Armadillo Hotel Grp., L.L.C. v. Harris*, 84 F.4th 623, 628 (5th Cir. 2023) ("The rule against claim splitting prohibits a party . . . from simultaneously prosecuting multiple suits involving the same subject matter against the same defendants." (citation omitted)).

a *Martinez* report, this Court appears to have "accepted Hester's affidavit, police report, and grand jury testimony as true" despite Welsh's contrary claims. *Id.* at *2–3. In addition, this Court referenced certain fact findings in the state appellate court opinion which ultimately reversed Welsh's conviction stemming from the November UOF. *Id.* The Fifth Circuit cautioned that while the Court "may take judicial notice of documents in the public record . . . and may consider such documents in determining" whether to dismiss an action, such documents may only be reviewed for evaluating "what statements they contain, not to prove the truth of their contents, and typically must be attached to the complaint." *Id.* at *3 (internal quotation marks, brackets, and footnotes omitted). Welsh referenced, but did not attach, the state court opinion to his complaint. *Id.*

Thus, the Fifth Circuit concluded that on remand the Court must consider whether Welsh's suit is precluded by prior claims, and if not, whether the undersigned "properly identified and resolved any factual conflicts between Welsh's complaint and the *Martinez* report."[5] *Id.* The undersigned therefore lays out the relevant factual background of the instant case and case number 5:18-cv-20 before addressing whether Welsh's claims are precluded.

## II.     <u>Standard of Review</u>

Section 1915(e) requires dismissal of an IFP complaint *at any time* if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.[6]     28 U.S.C. § 1915(e)(2)(B)(i)–(iii); *see Newsome v. E.E.O.C.*, 301 F.3d 227, 231–33 (5th Cir. 2002)

---

[5] Because the undersigned recommends dismissal of all claims herein on claim splitting or res judicata grounds (except for those against Lamb County, which involve only a legal, merits-based analysis), the Court need not consider whether it improperly relied on authenticated records in dismissing Welsh's claims.

[6] At the time he filed his Complaint and IFP application, Welsh was housed at the TCCC under an order and judgment of civil confinement. Thus, he is not a "prisoner" within the meaning of 28 U.S.C. § 1915(h) and is not subject to the screening provisions of the Prison Litigation Reform Act. Because Welsh sought and was granted leave to proceed IFP, however, he is nevertheless subject to the screening provisions of 28 U.S.C. § 1915(e)(2). Moreover, the acts he complains of stem from alleged violations during his state criminal proceedings. The Court therefore evaluates his claims under the constitutional standards applicable to pretrial detainees—not civilly committed persons.

(affirming dismissal of pro se, non-prisoner plaintiff's claims as frivolous and for failure to state a claim under § 1915(e)(2)(B)(i) and (ii)). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327. When analyzing a pro se plaintiff's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) (holding that courts may dismiss prisoners' in forma pauperis claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

### III.    Discussion

**A. Welsh's underlying criminal case.**

Both Welsh's claims in the instant case and case number 5:18-cv-20 arise from him being charged with and convicted for fabricating evidence, following the alleged November UOF, with his conviction subsequently being overturned by the Amarillo Court of Appeals.  Because its procedural history is relevant to these claims, the undersigned describes it in pertinent part.

As a result of the November UOF, Welsh claimed he was injured by TCCC staff and asked TCCC Security Director Woods to call the police to report alleged assaults by various TCCC employees; Littlefield Police Chief Ross Hester responded to the call.  *Welsh v. Correct Care Recovery Sols.*, No. 5:18-cv-20, Am Compl. 65, ECF No. 20.  Hester interviewed Welsh, reviewed witness statements and the video footage, and determined that TCCC staff had not assaulted Welsh.  *Id.* at 65–69.

Based on this conclusion, Hester charged Welsh under Texas Penal Code § 37.09[7] for Tampering with or Fabricating Physical Evidence (*id.* at 66; 2d Am. Compl. 2), and he was subsequently convicted in May 2018.  2d Am. Compl. 2.  A Texas state court sentenced Welsh to eleven years in the Texas Department of Criminal Justice (TDCJ).  *Id.*  On appeal, Welsh argued that the evidence was insufficient to support his conviction—the appellate court agreed, overturning his conviction.  *Id.* at 3 (citing *Welsh*, 570 S.W.3d 963).[8]

---

[7] A person violates this provision if:  "(1) knowing that an investigation is pending or in progress; (2) he makes, presents, or uses a thing with knowledge of its falsity; and (3) acts with the intent to affect the course or outcome of the investigation."  *Welsh v. State*, 570 S.W.3d 963 (Tex. App.—Amarillo 2019, pet. ref'd) (citing TEX. PENAL CODE ANN. § 37.09(a)(2)).

[8] While "express[ing] no opinion on the applicability of other Penal Code provisions to the facts of this case," the court of appeals nevertheless noted "that the two Penal Code provisions preceding section 37.09 prohibit conveyance of false information," thus raising the question of whether Welsh could have been successfully prosecuted for a different crime.  *See Welsh*, 570 S.W.3d at 967 ("It is the conveyance of false information, not the making, presenting, or using of physical evidence with knowledge of its falsity that occurred here.").  Regardless, the bottom line is that the court did not conclude the evidence was insufficient to support a finding that Welsh indeed struck himself in the

**B. Welsh's claims in this case (5:20-cv-77).**

Welsh asserts claims against the following Defendants: (1) Lamb County; (2) City of Littlefield (Littlefield); (3) Lamb County District Attorney Scott Say; (4) Assistant Lamb County District Attorney Ricki Redman; and (5) Littlefield Police Chief Ross Hester. *Id.* at 2. Welsh sues all Defendants in their individual capacities but also names Defendants Say and Redman as principal agents and official policy makers for Lamb County, and Defendant Hester and the Mayor (name unknown) as principal agents and official policy makers for Littlefield. *Id.*

Welsh divides his Second Amended Complaint into seven counts for relief, described as follows:

### 1. Count I: false imprisonment and due process

Welsh claims he was falsely imprisoned by Lamb County, Littlefield, and Ross Hester in violation of his due process rights. *Id.* at 13. The entirety of Welsh's present suit stems from the November UOF, his conviction, and its eventual reversal on appeal. *See id.*

According to Welsh, he was wrongly imprisoned from June 16, 2018, to August 6, 2019, because his conviction was overturned by the Texas Court of Appeals. *Id.* at 3; *see Welsh*, 570 S.W.3d at 968. He alleges that his wrongful conviction "was a deliberate decision from the County and City policy makers to follow a course of action to be the moving force to violate [his] rights." 2d Am. Compl. 3. In support, he alleges that several violations of his procedural and substantive due process rights occurred during the prosecution. *Id.* at 6–7; Questionnaire 1, 14, 15, ECF No. 23.[9] First, he claims Lamb County violated his procedural due process rights because it "prevent[ed] [him] from presenting both capacity evidence and evidence of his insanity."

_____

face and/or injured himself—it found that such facts would not support a conviction for Tampering with or Fabricating Physical Evidence under § 37.09(a)(2). *Id.*

[9] Page citations to Welsh's Questionnaire refer to the electronic page number assigned by the Court's electronic filing system.

Questionnaire 5. Second, he claims Defendants Lamb County, Littlefield, and Hester violated his due process rights "by manufacturing a criminal charge" because the underlying "facts of the case do [not] comport with the law" of his charge. *Id.* at 1. In addition, Welsh contends Defendant Redman improperly "used evidence of [Welsh's] sexual crimes to help turn the ire of the jury against him in opposition" to the court's orders. *Id.* at 15; 2d Am. Compl. 7. Welsh further avers Defendants "Say and Redman conspired with a Chris Woods to dispose of physical evidence of a video tape that continuously videoed Welsh while in an administrative cell after the physical assault by Woods' staff." 2d Am. Compl. 7. Concluding his allegations, Welsh claims Defendants Say and Redman relied on Defendant Hester's perjurious testimony in obtaining the conviction. *Id.*; Questionnaire 14. Welsh asserts that Lamb County, Littlefield, and Hester's conduct caused him "severe mental sickness of depression, anxiety, and sleepless nights due to worry, with the added physical illness causing pain by headaches and nausea."[10] 2d Am. Compl. 13.

### 2. Count II: unreasonable seizure without probable cause

Welsh contends that Defendants Lamb County, Littlefield, and Hester violated his Fourth Amendment right to be free from unreasonable seizure without probable cause. *Id.* Specifically, he avers that Defendants subjected him to unreasonable seizure by confining him without probable cause in the Lamb County Jail from November 28, 2017, through June 26, 2018, and by causing him to be confined in TDCJ following his conviction from June 26, 2018, through August 6, 2019. *Id.* at 3–4.

### 3. Count III: selective prosecution

Welsh claims that Defendants Lamb County, Littlefield, and Hester selectively prosecuted him in violation of his equal protection and due process rights. *Id.* at 14. More specifically, Welsh

---

[10] Welsh generally alleges this harm as to each claim. *See, e.g.*, 2d Am. Compl. 13–16.

avers that as a Sexually Violent Predator (SVP), he cannot be held criminally responsible for his actions because he is insane. *Id.* at 4. He alleges that Defendants Lamb County, Littlefield, and Hester engaged in "discrimination within the law by only prosecuting the SVP insanity class" as "a policy, practice, or custom of" Lamb County. *Id.* When asked in a questionnaire to explain, Welsh responded that "defendants do not prosecute individual[s] who commit similar offenses as Welsh who are mentally ill." Questionnaire 6. According to Welsh, "Lamb County was deliberately indifferent[,] adopting a decision to prosecute Welsh," and that he was "maliciously [singled] out for criminal prosecution based on Lamb County's, City of Little Field [sic], and Ross Hester['s] discriminatory animus." 2d Am. Compl. 5.

### 4. Count IV: unconstitutional punishment

Welsh asserts that he is entitled "to be free from punishment under the Eighth and Fourteenth Amendments." *Id.* at 14. He contends that he was "unconstitutional [sic] confined . . . by cruel and unusual means" and "was unconstitutional [sic] punished for a crime he did not commit and/or was unconstitutionally punished while he was mentally insane," which "was a deliberate decision from the County and City policy makers." *Id.* at 6.

### 5. Count V: access to courts and due process

Welsh contends that Defendants Lamb County, Littlefield, and Hester violated his right to access the courts by denying him the opportunity to file a non-frivolous legal claim. *Id.* at 15. In support, he avers that he accused Leslie Dimwiddie, Dustin Tirjerina, Arnulfo Hernandez Jr., John Cochran, and Adam Peirce each of assault after the November UOF, but that Lamb County (through its principal agents and policy makers Say and Redman) and Littlefield (through its agents the Mayor and Hester) refused to pursue his claims. *Id.* at 7–9. Similarly, he claims he accused "Cochran and Various [TCCC] employees" of using "unlawful restraints," but that Defendants

9

again refused to process the claims. *Id.* at 9–10. Lastly, Welsh asserts he lodged complaints against John Cochran and Michael Searcy for sundry violations of the Texas Constitution and United States Constitution, but Defendants again allegedly refused to pursue the claims. *Id.* at 10–11. According to Welsh, this nonfeasance also violated his procedural and substantive due process rights. Questionnaire 32, 36.

### 6. Counts VI and VII: equal protection

As to counts six and seven, Welsh generally avers that Defendants violated his Fourteenth Amendment right to equal protection due to the above purported violations. 2d Am. Compl. 15–16. Welsh claims Defendants Lamb County, Littlefield, Say, Redman, and Hester (*id.*) violated his right to equal protection because he was "prosecuted for defending himself." Questionnaire 31.

### C. 5:18-cv-20 claims and procedural history.

To determine whether Welsh's claims in the instant case are precluded by res judicata or claim splitting, the Court only recites facts relevant to Welsh's claims in 5:20-cv-77.

Welsh averred that on November 13, 2017, TCCC officers used force excessive to the need. *Welsh v. Correct Care Recovery Sols.*, No. 5:18-cv-20, Am Compl. 56, ECF No. 20[11] [hereinafter *Welsh I*]. Specifically, Welsh claimed that after he refused to accept a housing assignment, Security Director Woods ordered officers to use force on Welsh. *Id.* Welsh asserted that after the officers shackled his arms and legs, they moved him to a different cell. *Id.* When the officers attempted to remove the handcuffs, Welsh states that he "moved his hands," which Welsh contended allegedly caused Officer Hernandez to twist Welsh's arm in an attempt to break it. *Id.*

---

[11] Page citations to Welsh's Amended Complaint refer to the electronic page number assigned by the Court's electronic filing system.

at 57. Welsh further claimed that Officer Dimwiddie repeatedly slammed his head into the floor, causing swelling and bruising. *Id.*

After the use of force, Defendant Chief Hester was called to investigate. *Id.* at 65. Hester then charged Welsh "with fabricating physical evidence by assaulting his own face, and making a false report to a Peace Officer." *Id.* at 65–69. Welsh claimed that Director Woods and Chief Hester conspired to bring false charges against him. *Id.* Welsh asserted that after the UOF, he was placed in the Secure Management Unit (SMU) November 13 to 27, 2017. *Id.* Welsh alleged that Correct Care Recovery Solutions (CCRS) officials conspired to hold him and illegally detained him in the SMU on behalf of the Lamb County Attorney's Office, the Littlefield Police Department (LPD), Chief Hester, the 154th District Attorney's Office, and Director Woods, and failed to secure his appearance before a magistrate judge within forty-eight hours of being charged. *Id.* at 65–66. Lastly, Welsh averred that Littlefield, through its "agent" Chief of Police Albert Garcia, "has created a culture and/or failed to train the Littlefield police officers" resulting in constitutional harm. *Id.* at 79.

Ultimately, the State criminally prosecuted and convicted Welsh based on Hester's investigation and charge, as set out above. *See Welsh*, 570 S.W.3d at 964 & n.1; *supra* Section III.A. Based on Welsh's conviction, the Court found that Welsh's excessive force and conspiracy claims arising from the November UOF were barred by *Heck v. Humphrey*. *Welsh I*, ECF No. 43, at 52–56 (dated Apr. 24, 2019) [hereinafter Screening Dismissal].[12] In addition, after finding that Welsh was arrested on a warrant signed by a justice of the peace on November 28, 2017, and

---

[12] The Court dismissed Welsh's claims as *Heck*-barred on April 24, 2019, despite the Amarillo Court of Appeals' reversal in February 2019, because Welsh did not make the Court aware that his conviction had been overturned until after the dismissal order was entered. *See* ECF No. 47. Moreover, in denying Welsh's Rule 59(e) motion, the Court noted that because the State had filed a petition for discretionary review in the Texas Court of Criminal Appeals, which was pending at the time, Welsh had still failed to satisfy the conditions of *Heck*—i.e., by showing "his criminal conviction ha[d] been overturned or otherwise invalidated by a *final* order." ECF No. 49, at 4.

appeared before a magistrate judge a day later, the Court dismissed his claims that CCRS illegally detained him from November 13–28, 2017 on behalf of LPD, Lamb County Attorney's Office, and the 154th District Attorney's Office. *Id.* at 57. The Court also dismissed Welsh's failure to train allegations based on officials' failure to press assault charges against TCCC employees because Welsh has no constitutional right to have "police investigate or prosecute alleged crimes," and he failed to plead facts showing an official policy. *Id.* at 59–60.

After the Amarillo Court of Appeals overturned Welsh's conviction, the Fifth Circuit necessarily reversed this Court's *Heck* dismissal of the November UOF claim, resulting in *Welsh I*'s reinstatement. *See Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 316 (5th Cir. 2021).

Following remand, the Court granted summary judgment, dismissing all claims against Defendant Hester—i.e., that Hester charged Welsh without probable cause, tainted the intermediary's probable cause decision, and manufactured a charge against Welsh that he is incapable of committing—after finding he was entitled to qualified immunity on all of Welsh's claims. *Welsh I*, ECF Nos. 195, 200. After dismissing Hester, Welsh's only remaining claims were those for two separate alleged uses of force, including the November UOF, against officers who are not defendants in the present action. The undersigned issued an R&R regarding those defendants' motion for summary judgment on December 27, 2023, which the district judge adopted in full. *Id.* at ECF Nos. 255, 268, 273. Welsh filed an appeal shortly thereafter, resulting in a stay and administrative closure of the case. *Id.* at ECF Nos. 285, 288, 296. Upon a joint motion to stay pending possible settlement, the Fifth Circuit dismissed the appeal "without prejudice to the right of either party to reinstate the appeal . . . within 180 days." *Id.* at ECF No.

299, at 2; *Welsh v. Correct Care Recovery Sols.*, No. 24-10111, ECF No. 16 (5th Cir. Feb. 29, 2024).

### D. Timeline

For ease of reference, the undersigned constructs the relevant timeline as follows:

- **November 13, 2017:** Use of force incident. *Welsh I*, Am. Compl. 65.

- **November 13-27, 2017:** Welsh confined to the SMU. *Id.*

- **November 28, 2017:** Welsh is charged with tampering with or fabricating evidence under Texas Penal Code § 37.09. 2d Am. Compl. 2.

- **January 22, 2018:** Welsh files case number 5:18-cv-20. *Welsh I*, ECF No. 1.

- **May 8, 2018:** Welsh amends his complaint in 5:18-cv-20. *Welsh I*, ECF No. 20.

- **May 18, 2018:** Welsh is convicted of tampering with evidence. *Welsh I*, ECF No. 175, at 58.

- **February 26, 2019:** The Amarillo Court of Appeals reverses Welsh's conviction. *See Welsh*, 570 S.W.3d 963.

- **April 24, 2019:** The Court dismisses Welsh's claims in 5:18-cv-20; petition for review in criminal case pending. *Welsh I*, ECF Nos. 43, 44.

- **July 3, 2019:** Texas Court of Criminal Appeals refuses petition for discretionary review, finalizing decision reversing Welsh's criminal conviction.

- **July 23, 2019:** Welsh appeals the Court's dismissal of his claims in 5:18-cv-20. *Welsh I*, ECF No. 54.

- **March 30, 2020:** Welsh files case number 5:20-cv-77. ECF No. 1.

- **December 16, 2020:** The undersigned enters an FCR recommending the district judge dismiss Welsh's claims in 5:20-cv-77. ECF No. 24.

- **February 9, 2021:** The Fifth Circuit vacates a portion of the Court's dismissal of Welsh's claims in 5:18-cv-20, due in part to the reversal of Welsh's criminal conviction. *Welsh I*, ECF Nos. 76, 77.

- **January 24, 2022:** Judge Cummings adopts the undersigned's FCR and dismisses Welsh's claims in 5:20-cv-77. ECF Nos. 33, 34.

- **February 24, 2022:** The Court grants Welsh's motion to amend in part and dockets his Supplemental Complaint in 5:18-cv-20. *Welsh I*, ECF No. 157.

- **March 29, 2022:** Welsh appeals the dismissal of 5:20-cv-77. ECF No. 38.

- **September 30, 2022:** Defendant Hester is dismissed in 5:18-cv-20. *Welsh I*, ECF Nos. 195, 200.

- **January 8, 2024:** The Fifth Circuit vacates and remands the Court's dismissal of Welsh's claims in 5:20-cv-77. ECF Nos. 48, 49.

## IV.    Analysis

### A.  The Court may sua sponte raise res judicata.

As an affirmative defense, res judicata must generally be pleaded by the defendant. *See* FED. R. CIV. P. 8(c)(1). Here, the Court is still conducting § 1915(e) screening and has ordered no defendant to answer Welsh's claims. Nevertheless, as noted by the Fifth Circuit, a court may sua sponte raise res judicata, including during the screening process. *See Welsh*, 2024 WL 81580, at *2 n.10 (citing *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990)); *Omran v. Wyche*, No. 17-cv-0064, 2017 WL 6627410, at *2 (W.D. La. Apr. 5, 2017) (considering res judicata sua sponte during screening because "[t]he court's invocation of the defense . . . serve[d] the interest of judicial economy and avoid[ed] additional burden on the" court and parties "that would [otherwise] be imposed if this new complaint were to be served and litigated further"), *aff'd*, 745 F. App'x 225 (5th Cir. 2018) (per curiam).

Both Welsh's current action and his prior case (*Welsh I*) were brought before the United States District Court for the Northern District of Texas in the Lubbock Division. Further, this Court presided over *Welsh I* and dismissed claims against the relevant *Welsh I* defendants with prejudice. *See Welsh I*, ECF Nos. 43, 44, 173, 195, 200. As such, the Court may raise the issue of res judicata on its own volition and analyze Welsh's claims against Defendants on that basis. *McIntyre v. Ben E. Keith Co.*, 754 F. App'x 262, 264–65 (5th Cir. 2018) (per curiam) (affirming

14

district court's sua sponte dismissal of complaint based on res judicata); *see also Ali*, 892 F.2d at

440 ("[I]n an action proceeding under section 1915(d), [the court] may consider, sua sponte,

affirmative defenses that are apparent from the record even where they have not been addressed

or raised."). Moreover, the Court will consider whether a similar doctrine, i.e., claim splitting,

operates to preclude claims Welsh appears to be pursuing via separate actions.

### B. Legal Standard

Claim preclusion, also known as res judicata, "bars the litigation of claims that either have

been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v.

Singh*, 428 F.3d 559, 571 (5th Cir. 2005). Claim preclusion requires the satisfaction of four

elements: "(1) the parties are identical or in privity; (2) the judgment in the prior action was

rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final

judgment on the merits; and (4) the same claim or cause of action was involved in both actions."

*Id.*

When determining whether a new case raises the same claims or causes of action as a prior

case, the Fifth Circuit applies a "transactional test." *Id.* "Under that test, the preclusive effect of

a prior judgment extends to all rights the original plaintiff had 'with respect to all or any part of

the transaction, or series of connected transactions, out of which the [original] action arose.'"

*Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004) (quoting Restatement

(Second) of Judgments, § 24)). "It is the 'nucleus of operative facts' in the first action, rather than

the 'facts litigated' or the 'type of relief requested, substantive theories advanced, or types of rights

asserted, [that] defines the claim.'" *Fitch v. Wells Fargo Bank, N.A.*, 423 B.R. 630, 640 (E.D. La.

2010) (quoting *United States v. Davenport*, 484 F.3d 321, 326–27 (5th Cir. 2007)); *see also Test

Masters*, 428 F.3d at 571; *Petro-Hunt*, 365 F.3d at 396; *Offiong v. Holder*, 864 F. Supp. 2d 611,

617 (S.D. Tex. 2012) (stating that the Fifth Circuit's analysis "focuses upon whether the two cases under review are based on 'the same nucleus of operative facts'" (quoting *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999))).

"Claim-splitting occurs when a single 'cause of action' is split by advancing one part in an initial suit and another part in a later suit." *Ameritox, Ltd. v. Aegis Scis. Corp.*, No. 3:08-CV-1168-D, 2009 WL 305874, at *4 (N.D. Tex. Feb. 9, 2009) (quoting *F.D.I.C. v. Nelson*, No. 93-1590, 1994 WL 93409, at *2 n.5 (5th Cir. Mar. 15, 1994)). It is essentially traditional res judicata or claim preclusion, without the requirements that a final judgment be entered on the merits by a court of competent jurisdiction. *See Armadillo Hotel Grp.*, 84 F.4th at 628.

Here, Welsh has pursued two different suits, i.e., filing the instant case during the pendency of *Welsh I*, asserting claims arising out of the same set of facts—the November UOF and subsequent tampering charges. As set forth below, the undersigned concludes that some claims asserted herein are barred by res judicata, while others are precluded by the claim splitting doctrine, save Welsh's claims against one defendant, which should be dismissed on the merits.

### C. Welsh's claims against Defendant Hester are subject to dismissal under the claim splitting doctrine.

In the instant case, Welsh claims that Hester, in connection with the November UOF and subsequent conviction for tampering: (1) falsely imprisoned Welsh from November 28, 2017, to June 26, 2018, in violation of his due process rights; (2) manufactured criminal charges in violation of Welsh's due process rights; (3) unreasonably seized him without probable cause from November 28, 2017, to June 26, 2018; (4) selectively prosecuted Welsh in violation of his equal protection and due process rights; (5) unconstitutionally punished Welsh by confining him from November 28, 2017, to June 26, 2018, for a crime he did not commit; (6) violated Welsh's right to access the courts by refusing to file criminal charges against TCCC employees for the November

UOF; and (7) violated Welsh's equal protection rights by prosecuting Welsh "for defending himself." 2d Am. Compl. 3–4, 6–10, 13–15; Questionnaire 1, 31.

In *Welsh I*, Welsh claimed that Director Woods and Chief Hester conspired to bring false charges against him after Welsh reported the November UOF and requested Hester bring assault charges against TCCC employees, but instead charged Welsh with tampering. *Welsh I*, Am. Compl. 65–69. On September 30, 2022, the undersigned entered an R&R, recommending the district judge grant Hester's summary judgment motion (ECF No. 173) and dismiss Welsh's claim against Hester on qualified immunity grounds. ECF No. 195. The district judge adopted the undersigned's R&R and ordered claims against Hester in his individual capacity be dismissed. ECF No. 200.

At this juncture, res judicata does not bar Welsh's claims against Hester. *Welsh I* remains pending as to some defendants. Although the Court has dismissed all claims against Hester in its order granting summary judgment (ECF Nos. 195, 200), that order does not qualify as a final judgment because it is not appealable and claims against other defendants remain open. *See* ECF No. 203 (denying Welsh's motion to enter 54(b) judgment as to the Court's dismissal of Hester); *Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 230 (5th Cir. 2018) (per curiam) ("Finding no 'federal appellate decision which has applied preclusion to a prior nonfinal ruling as to which appellate review was unavailable' . . . ." (citation omitted)); *Acha v. Beame*, 570 F.2d 57, 63 (2d Cir. 1978) ("Where a judgment is not 'final,' . . . and hence not certifiable under Rule 54(b), it has no res judicata effect."). Because the Court has not entered final judgment as to Hester, the undersigned considers whether Welsh's claims against him are foreclosed under the modified claim splitting test. *See Armadillo Hotel Grp.*, 84 F.4th at 628 ("Th[e] [res judicata] test is modified when the prior suit is pending because, by definition, no final judgment from the prior

suit exists."). "Accordingly, in the context of claim splitting when an earlier suit is pending, the relevant res judicata factors are" the first and fourth—i.e., whether the parties are the same or in privity, and whether the same claim is involved in both suits.[13] *Id.*

In both cases, Welsh brought claims against Hester in his individual capacity. 2d Am. Compl. 8; *Welsh I*, Am. Compl. 3. Thus, the first element for application of claim splitting— identical parties—is met. *Hamilton Grp., Inc. v. Welch*, No. 3:96-CV-2950-R, 1997 WL 560775, at *4 (N.D. Tex. Sept. 2, 1997) (Res judicata "requires that the claim must have been brought against an opposing party in the same capacity."); *cf. Johnson v. City of Houston*, 444 F. App'x 26, 31 (5th Cir. 2011) (per curiam) ("[A]s a general rule, the identity requirement for claim preclusion is not fulfilled when a person participates in two different suits in different capacities."). Thus, the "critical issue is whether the two actions are based on the 'same nucleus of operative facts.'" *Test Masters*, 428 F.3d at 571 (citation omitted).

Welsh's claims in the instant case and *Welsh I* stem from the same nucleus of operative facts—both are predicated on Hester's allegedly unlawful acts after the November UOF. As such, Welsh's claims herein should be dismissed with prejudice under the claim splitting doctrine.

In the present case, Welsh contends that Hester and others violated his Fourth Amendment right to be free from unreasonable seizure without probable cause. 2d Am. Compl. 13. Specifically, he avers that Defendants subjected him to unreasonable seizure by confining him without probable cause in the Lamb County Jail between November 28, 2017, and June 26, 2018, and by obtaining a conviction which led to his confinement in TDCJ between June 26, 2018, and August 6, 2019. *Id.* at 3–4. Welsh also claims this same conduct by Hester amounted to false

---

[13] Because the only difference between claim splitting and res judicata is that the latter requires satisfaction of two additional elements—a court of competent jurisdiction and final judgment on the merits—the undersigned relies on cases discussing traditional claim preclusion to determine whether Welsh's claims against Hester involve the same party and claims.

imprisonment in violation of his due process rights. *Id.* at 13. Welsh contends Hester violated his due process rights "by manufacturing a criminal charge" because the underlying "facts do [not] comport with the law." *Id.* at 1. In addition, Welsh asserts that he is entitled "to be free from punishment under the Eighth and Fourteenth Amendments." *Id.* at 14. He contends that he was "unconstitutional [sic] confined . . . by cruel and unusual means" from November 28, 2017, to June 26, 2018, and "was unconstitutional [sic] punished for a crime he did not commit and/or was unconstitutionally punished while he was mentally insane," which "was a deliberate decision from the County and City policy makers"—including Hester. *Id.* at 6. Welsh also claims that Hester selectively prosecuted him in violation of his equal protection and due process rights because as an SVP, he cannot be held criminally responsible due to his insanity. *Id.* at 4, 14. He alleges that this constitutes "discrimination within the law by only prosecuting the SVP insanity class" as "a policy, practice, or custom of" Lamb County. *Id.* In addition, Welsh contends that Hester violated his right to access the courts by denying him the opportunity to file a non-frivolous legal claim— i.e., would not allow him to file assault charges against officers for the November UOF. *Id.* at 15. As to counts six and seven, Welsh generally avers that Defendants violated his Fourteenth Amendment right to equal protection because he was "prosecuted for defending himself." *Id.* at 15–16; Questionnaire 31.

Similarly, in *Welsh I*, Welsh alleged Hester and others violated his "Fourth Amendment [r]ight of unreasonable seizure" when they held him in the SMU from November 13 to November 27, 2017, and failed to secure his appearance before a magistrate judge within forty-eight hours of being charged. *Welsh I*, Am. Compl. 65–66. Welsh averred Hester "violate[d] [his] Fourth and Fourteenth right of unreasonable seizure [sic all]" by ignoring that Welsh was "a victim of assault and" instead, lied that Welsh "fabricate[d] evidence and [made a] false report." *Id.* at 66. In

addition, Welsh claimed Hester violated his Fourteenth Amendment rights by "refus[ing] to press or investigate criminal charges of assault." *Id.* at 68. Welsh also claimed that Hester lacked probable cause to initiate tampering charges against him. *Id.* at 83.

While the current claims of allegedly unconstitutional conduct may be different or more expansive, these claims nevertheless arise from the same set of operative facts, i.e., the November UOF and resulting investigation and charges. Both cases essentially claim that TCCC officers used excessive force against Welsh and, rather than prosecuting the officers, Hester and others unlawfully charged Welsh with evidence fabrication and tampering. Because the conviction was subsequently overturned, Welsh claims unlawful confinement and prosecution. For determining the scope of claim splitting's application when considering the fourth element, i.e., comparing the nature of the claims, as with traditional claim preclusion, "a prior judgment's preclusive effect extends *to all rights of the plaintiff* 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'" *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004) (emphasis added) (quoting *Petro-Hunt*, 365 F.3d at 395–96). Because Welsh claims that officers used excessive force and he was innocent of any tampering or fabricating, making all resulting actions by Hester unlawful, Welsh should have brought all such claims of unconstitutional conduct under one, i.e., his initial, cause of action. *See Lewandowski v. Prop. Clerk*, 209 F. Supp. 2d 19, 23 (D.D.C. 2002) ("[O]nce a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost." (citation omitted)); *Sutton v. Fitch*, No. 4:22-CV-114-DAS, 2023 WL 4189661, at *3 (N.D. Miss. June 26, 2023) (dismissing plaintiff's claims of cruel and unusual punishment during his incarceration because he failed "to assert this claim in his prior suit for wrongful conviction," and res judicata bars "all claims which have been litigated" or "should have been litigated in the prior

suit"), *aff'd*, 2024 WL 65433 (5th Cir. Jan. 5, 2024); *Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 767 (6th Cir. 2015) (affirming dismissal on res judicata grounds because while the first suit related to plaintiff's 2009 arrest and the second to his 2012 arrest, the "underlying transaction that gave rise to [his] injuries" was the first arrest (emphasis omitted)).

Moreover, while "'subsequent wrongs by a defendant constitute new causes of action' not barred by res judicata when those wrongs 'occurred either after the plaintiff[] had filed [his] prior lawsuit or after the district court entered judgment in the prior lawsuit,'" this does not counsel against finding Welsh's claims precluded. *Sacks v. Tex. S. Univ.*, 83 F.4th 340, 345 (5th Cir. 2023) (per curiam) (quoting *Davis*, 383 F.3d at 314). Welsh filed *Welsh I* on January 22, 2018, well after many of the events catalyzing these lawsuits had already occurred or were in progress. *See Welsh I*, ECF No. 1 (filing suit after November UOF, charges for tampering were initiated, alleged false imprisonment had already begun, and after the grand jury indicted him). In addition, Welsh amended his complaint in *Welsh I* on May 8, 2018 (ECF Nos. 18, 20, dated May 8, 2018), just before his trial for tampering began. By the time Welsh filed his Amended Complaint in *Welsh I*, he was aware of all the alleged wrongs resulting from the November UOF and tampering charge. As Welsh's claims relate to Hester initiating charges against Welsh and jailing him during the pendency of such prosecution, the instant case does not include any "claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Sacks*, 83 F.4th at 345 (quoting *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955)); *see Wheeler*, 807 F.3d at 767 (refusing defendant's invitation to look at the specific injuries alleged, i.e., a second purported unlawful arrest based on fabricated evidence, but instead examining "the

underlying *transaction* that gave rise to those injuries," i.e., the original unlawful act of planting evidence and falsifying a citation).[14]

In sum, because Hester's alleged unlawful conduct occurred before Welsh filed his Original or Amended Complaint in *Welsh I*, and Welsh's claims arise from the same nucleus of operative fact—the November UOF and subsequent charge—Welsh should have brought these claims in *Welsh I*. As such, his claims against Hester are barred by claim splitting. *See Ameritox, Ltd.*, 2009 WL 305874, at *4 ("[C]laim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." (quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008))); *Advanced Micro Devices, Inc. v. Polaris Innovations Ltd.*, No. 1:23-CV-00304-DAE, 2023 WL 9183303, at *3 (W.D. Tex. Nov. 13, 2023) ("[T]he claims that could have and should have been asserted in the previous action 'must be barred under the rule against claim splitting.'" (citation omitted)).

The undersigned therefore recommends the district judge dismiss with prejudice Welsh's claims against Hester.

### D. Welsh's claims against the remaining Defendants should be dismissed based on res judicata, except for those asserted against Lamb County, which fail to state a viable *Monell* claim.

Unlike claims against Hester, the Court's dismissal of the other defendants was a final, appealable judgment, left undisturbed by the Fifth Circuit's remand as to the excessive force claims. *See Welsh I*, ECF Nos. 43, 44; *Welsh*, 845 F. App'x at 316. As such, the undersigned must determine whether Welsh's remaining claims are barred under res judicata or a merits analysis.

---

[14] To the extent any alleged unlawful act by Hester occurred *after* Welsh last amended his complaint in *Welsh I*, *see infra* note 16 for additional analysis.

No question exists as to whether this Court is a court of competent jurisdiction, having the power to adjudicate Welsh's claims, including those asserted in *Welsh I*. *See Welsh I*, ECF Nos. 43, 44 (dismissing all claims against Say, Redman, Lamb County Attorney's Office, Littlefield, and the 154th District Attorney's Office). Moreover, claims against Say, Redman, Lamb County Attorney's Office, Littlefield, and the 154th District Attorney's Office in *Welsh I* were adjudicated through a screening dismissal and dismissed with prejudice because (1) the Attorney's Office and 154th District Attorney's Office are not jural entities, (2) Say and Redman were entitled to immunity, and (3) Welsh failed to state a viable municipal liability claim against Littlefield, which qualifies as a final judgment on the merits. *See Garrett v. BBVA Compass Bank*, No. 3:19-CV-1491-C-BH, 2020 WL 3065938, at *6 (N.D. Tex. May 22, 2020) (finding the final judgment on the merits element met because the previous actions were dismissed "with prejudice for failure to state a claim upon which relief could be granted under . . . § 1915(e)(2)(B)(ii)"), *R. & R. adopted by* 2020 WL 3064800 (N.D. Tex. June 8, 2020). Thus, the only germane questions as to the remaining Defendants are whether (1) the allegations are the same claims and (2) they are being pursued against the same parties.

### *1.  Res judicata does not preclude Welsh's claims against Lamb County.*

In *Welsh I*, Welsh did not specifically sue Lamb County. Instead, he sued (1) Lamb County Attorney's Office; (2) Scott Say, 154th/Lamb County District Attorney's Office, in his individual capacity; (3) Ricki Redman, Lamb County District Attorney, in her individual capacity; and (4) the 154th District Attorney's Office. *Welsh I*, Am. Compl. 1–4. Thus, any application of res judicata to Welsh's current claims against Lamb County must be based on the notion of it being in privity with the county officials named in *Welsh I*.

"[T]o satisfy the identity element [of res judicata], strict identity of parties is not necessary. A non-party defendant can assert res judicata so long as it is in 'privity' with the named defendant." *Johnson*, 444 F. App'x at 30  (quoting *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992)).  Privity generally exists in only three limited circumstances:  "(1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990).

Federal courts have consistently held that a government official sued in his official capacity is in privity with the related governmental entity, and vice versa. *See Olibas v. Dodson*, 593 F. App'x 412, 413 n.1 (5th Cir. 2015) (per curiam) ("[I]t is well-settled that claims against a municipal official in his official capacity are claims against the county."); *Harmon v. Dallas Cnty.*, 927 F.3d 884, 888, 890 (5th Cir. 2019) (per curiam) (concluding "res judicata bar[red] [plaintiff's] claims against . . . [former Dallas County Constable] in his official capacity" because plaintiff previously brought an action against Dallas County).  Courts, however, have also consistently declined to bar claims against a governmental entity when claims were previously brought against an official in his *individual* capacity.  *Warnock v. Pecos Cnty.*, 116 F.3d 776, 778 (5th Cir. 1997) ("Nor was there privity between the county and [defendants] in their individual capacities."); *Johnson*, 444 F. App'x at 31 ("[A]s a general rule, the identity requirement for claim preclusion is not fulfilled when a person participates in two different suits in different capacities."); *Benson v. City of Texas City*, No. 3:13-CV-23, 2014 WL 948901, at *3–4 (S.D. Tex. Mar. 11, 2014) (allowing claims against city employees to proceed despite plaintiff's previous case against the city under *Monell*, because the city could not be vicariously liable for its employees' individual actions); *see also Clyce v. Farley*, 836 F. App'x 262, 271 (5th Cir. 2020) (declining to find privity

between different employees of the same governmental entity because they would each be separately and "personally liable for any judgments against them"). As such, the undersigned cannot conclude that Welsh's previous claims against Say and Redman in their individual capacities bar claims against Lamb County.

Claims against the Lamb County Attorney's Office and 154th District Attorney's Office in *Welsh I* require the same result. The undersigned has not found any case holding that privity *per se* exists between a governmental entity and the county in which it sits. *See Savage v. Jackson Cnty.*, No. 1:14-cv-01631-CL, 2016 WL 11664529, at *4 (D. Or. Apr. 28, 2016) (concluding the county was not in privity with the district attorney's office because the county "did not have control over the District Attorney's office" in the first matter and was a separate legal entity), *R. & R. adopted by* 2016 WL 11664611 (D. Or. July 14, 2016); *see also Johnson v. Hays Cnty.*, No. A-14-CA-834 LY, 2014 WL 5524144, at *3–4 (W.D. Tex. Oct. 31, 2014) (applying res judicata as a bar to plaintiff's claims against county employees because they were identical or in privity with previous county employee defendants but not to the county sheriff's department). As these offices are non-jural entities not subject to suit, it also does not follow that they could have sufficiently represented Lamb County's interests. *Cf. Sacks*, 83 F.4th at 346 (finding privity between the parties based on a close alignment of interests based on "[a] vicarious liability relationship between an employer and employee"); *see Clyce*, 836 F. App'x at 271. And these offices are not otherwise in privity with Lamb County—i.e., there is no property interest at play and because these parties were dismissed at screening in *Welsh I*, Lamb County could not have controlled the litigation. Because Lamb County is not in privity with any *Welsh I* defendant, Welsh's claims against Lamb County are not barred by res judicata. The undersigned therefore proceeds to assess the merits of Welsh's claims against Lamb County.

### 2. *Welsh fails to plead facts against Lamb County establishing liability under* **Monell.**

Welsh now claims that Lamb County, through policymakers Say and Redman, violated his "Due Process Rights to personal security and liberty from restraint by wrongly convicting Welsh under a tampering and fabricating evidence charge." 2d Am. Compl. 3. He also asserts he was imprisoned without probable cause and selectively prosecuted based on his SVP status. *Id.* at 3–4. Welsh avers Lamb County "violate[d] [his] right to access to [sic] the court by refusing to process [his] non-frivolous legal claim[s]" for alleged criminal conduct against various TCCC employees.[15] *Id.* at 7–10. Lastly, he contends Lamb County violated his right to equal protection because he was "prosecuted for defending himself." Questionnaire 31.

"A municipality is a 'person' subject to suit under Section 1983." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978)). A municipality cannot, however, "be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Instead, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (footnote omitted); *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality,

---

[15] While the undersigned recommends dismissal of Welsh's *Monell* claims based on a different ground—i.e., policy, practice, or custom—it is also worth noting that Welsh "does not have a constitutional right to have someone criminally prosecuted" and thus, he cannot establish a constitutional violation as to this claim. *Back v. TDCJ-CID*, No. 6:16cv15, 2016 WL 7971446, at *4 (E.D. Tex. Apr. 5, 2016) (citing *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990)), *R. & R. adopted by* 2016 WL 3033510 (E.D. Tex. May 27, 2016), *aff'd*, 716 F. App'x 255 (5th Cir. 2017).

and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.").

In other words, Welsh "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). "[T]he burden for establishing municipal liability under § 1983 is stringent." *Good v. City of Irving*, No. 3:06-CV-2133-K, 2009 WL 804701, at *8 (N.D. Tex. Mar. 26, 2009). Welsh must demonstrate: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). The principal agent or policymaker must have actual or constructive knowledge because "[a]ctions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

Welsh's policy claims should fail because he is trying to hold Lamb County responsible for its employees' individual actions without establishing any official policy or custom that is the moving force of a constitutional violation. *Holley v. Italy Indep. Sch. Dist.*, No. 3:23-cv-1239-BN, 2024 WL 1396275, at *5 (N.D. Tex. Mar. 31, 2024) ("Municipalities are not liable on the theory of respondeat superior and are almost never liable for an isolated unconstitutional act on the part of an employee." (quoting *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021))).

Welsh conclusorily alleges that the purported constitutional violations are "a policy, practice, or custom of . . . Lamb County and can be proved through discovery." 2d Am. Compl. 4; *see also id.* at 5 (asserting Lamb County has a policy or practice of selectively prosecuting SVPs

*based on its employees' decision to prosecute Welsh* for Tampering With or Fabricating Evidence).

Welsh, however, does not identify any specific Lamb County policy, and he cannot establish a

practice or custom based solely on the allegedly unlawful actions taken against him in a singular

prosecution. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 850–51 (5th Cir. 2009) ("A pattern

. . . requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" (quoting

*McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989))); *Martinez v. Nueces Cnty.*,

71 F.4th 385, 391 (5th Cir. 2023) (noting that a policy can be shown "via a pattern that has

'occurred for so long or so frequently that the course of conduct warrants the attribution to the

governing body,'" but that plaintiff's complaint did not "clear this bar"); *Carter v. Diamond URS*

*Huntsville, LLC*, 175 F. Supp. 3d 711, 733 (S.D. Tex. 2016) ("A plaintiff cannot conclusorily

allege a policy or a custom and its relationship to the underlying constitutional violation; instead

the plaintiff must plead specific facts." (citing *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d

162, 167 (5th Cir. 1997))).

Because Welsh fails to identify a Lamb County policy or establish a practice or custom of

Lamb County that caused the alleged constitutional violations, and merely complains of Lamb

County employees' individual actions, he fails to state a claim under *Monell*. *Jenkins v. LaSalle*

*Sw. Corr.*, No. 3:17-cv-1376-M-BN, 2018 WL 3748196, at *8 (N.D. Tex. July 11, 2018)

(recommending dismissal of plaintiff's *Monell* claim where the "alleged constitutional violations

[were] isolated to him"), *R. & R. adopted by* 2018 WL 3743945 (N.D. Tex. Aug. 7, 2018); *see*

*Brown v. Tarrant Cnty.*, 985 F.3d 489, 497 n.11 (5th Cir. 2021) (noting that the court "need not

consider whether [plaintiff's] claim also fail[ed] the other two *Monell* prongs" because he did not

identify a policy or custom). Therefore, the undersigned recommends the district judge dismiss

Welsh's claims against Lamb County for failure to state a claim.

### 3.   *Welsh's claims against Say and Redman are barred by res judicata.*

In *Welsh I*, the Court determined that Welsh could not bring claims—unreasonable seizure without probable cause (*Welsh I*, Am. Compl. 83)—against Say and Redman because they are entitled to prosecutorial immunity.  *Welsh I*, Screening Dismissal 9–10.  Welsh now similarly brings claims against Say and Redman in their individual capacities.  2d Am. Compl. 2.  Because Welsh brought claims against Say and Redman in *Welsh I* and in the instant case in their individual capacities, the parties are identical.  *See Hamilton Grp., Inc.*, 1997 WL 560775, at *4.  This leaves only the consideration of determining if these are the same claims, i.e., whether Welsh brought or could have brought these claims against Say and Redman in *Welsh I*.

Welsh contends Defendant Redman improperly "used evidence of [his] sexual crimes to help turn the ire of the jury against him in opposition" to the state court's orders.  2d Am. Compl. 7; Questionnaire 15.  Welsh further avers Defendants "Say and Redman conspired with a Chris Woods to dispose of physical evidence of a video tape that continuously videoed Welsh while in an administrative cell after the physical assault by Woods' staff."  2d Am. Compl. 7.  Welsh also claims Defendants Say and Redman relied on Defendant Hester's perjurious testimony in obtaining the conviction.  *Id.*; Questionnaire 14.  Welsh asserts that he was "unconstitutional [sic] confined . . . by cruel and unusual means" and "was unconstitutional [sic] punished for a crime he did not commit and/or was unconstitutionally punished while he was mentally insane," which "was a deliberate decision from the County and City policy makers"—i.e., Say and Redman.  2d Am. Compl. 6.  Lastly, Welsh generally avers that Defendants violated his Fourteenth Amendment right to equal protection due to the above purported violations and because he was "prosecuted for defending himself."  *Id.* at 15–16; Questionnaire 31.

Similar to Welsh's claims against Hester, Welsh complains of Say and Redman's conduct related to being charged with, and ultimately prosecuted for, tampering with or fabricating evidence. As discussed above, the undersigned has determined that any "subsequent wrongs" related to the November UOF and subsequent charges should have been brought in *Welsh I*. This includes those claims against Say and Redman for their alleged acts during Welsh's trial. Welsh's complaints regarding his trial for tampering with or fabricating evidence accrued at the latest by May 18, 2018, the date he was convicted, and within a mere ten days of having just amended his operative complaint. *See Welsh I*, ECF Nos. 18, 20 (amending complaint, postmarked May 8, 2018). In addition, because these alleged violations occurred approximately eleven months before the Court reached final judgment in *Welsh I*, Welsh could and should have brought these claims against Say and Redman.[16] Thus, the undersigned recommends the district judge dismiss all claims against Say and Redman in their individual capacities as barred by res judicata.[17]

### 4.  *Welsh's claims against Littlefield are barred by res judicata.*

Welsh claims that Littlefield: (1) falsely imprisoned him in violation of his due process rights from June 16, 2018, to August 6, 2019, and has a policy of doing such; (2) violated his Fourth Amendment right to be free from unreasonable seizure by confining him without probable cause in the Lamb County Jail between November 28, 2017, and June 26, 2018, and securing a conviction which resulted in his confinement in TDCJ from June 26, 2018, through August 6, 2019; (3) selectively prosecuted him and discriminated against him in violation of his equal

---

[16] In the year that followed Welsh's conviction, until the Court ultimately dismissed *Welsh I* on April 24, 2019, Welsh did not amend or seek leave to amend his complaint to assert these claimed constitutional violations. *See Welsh I*, ECF Nos. 20–44. These claims nevertheless arise out of the same nucleus of operative facts and remain barred. *See Anderson v. Hous. Cmty. Coll. Sys.*, 90 F. Supp. 3d 667, 672 (S.D. Tex. 2015) (concluding res judicata barred later retaliation claims that accrued after first case had been filed but before entry of final judgment, where there was no evidence court "prohibited [plaintiff] from amending her petition or that [she] attempted to amend her petition"); *see also Wheeler*, 807 F.3d at 767.

[17] Of course, in the event this conclusion is erroneous, these Defendants would nevertheless be protected by prosecutorial immunity.

protection and due process rights because as an SVP, he is insane and cannot be held criminally responsible for his actions; (4) unconstitutionally confined and subjected him to cruel and unusual punishment because he is innocent of the crime he was convicted for and criminally insane; (5) violated his right to access the courts by denying him the opportunity to file a non-frivolous legal claim in connection with the November UOF; and (6) violated his right to equal protection because he was "prosecuted for defending himself." Questionnaire 31; 2d Am. Compl. 3–6, 13–15.

In *Welsh I*, Welsh did not specifically name Littlefield as a Defendant, but he did name Chief of Police Albert Garcia, which the Court interpreted as asserting a claim against Littlefield. *Welsh I*, Screening Dismissal 60 n.42 (construing "Welsh's complaint as intending to sue the City of Littlefield, Texas by naming LPD and Albert Garcia, and . . . assess[ing] it as such"). Welsh claimed that Littlefield, through Garcia, created a culture of failing to train its officers and precluding its agents from aiding the plaintiff with its protection from CCRS officers' criminal acts. *Welsh I*, Am. Compl. 79. Liberally construing his allegations, the Court determined that he was alleging municipal liability claims against Littlefield for failure to investigate or prosecute officers in connection with the November UOF. *Welsh I*, Screening Dismissal 8, 59–60. Because the Court construed Welsh's claims against Garcia as a claim against Littlefield, which Welsh now explicitly names, both *Welsh I* and the instant case involve the same party.

Thus, the only remaining question is whether this case involves claims that were or could have been brought by Welsh. Similar to the other Defendants, Welsh's claims against Littlefield in both cases stem from the November UOF and subsequent charges, which the undersigned has already determined constitute a common nucleus of operative fact. While Welsh asserted policy claims based on Littlefield's failure to investigate or prosecute the defendant-officers in *Welsh I*

for the November UOF (*Welsh I*, Screening Dismissal 59–60), and here asserts different causes of action—false imprisonment, seizure without probable cause, selective prosecution, etc.—this does not prevent res judicata's application. *See Crear v. JPMorgan Chase Bank, N.A.*, 491 F. Supp. 3d 207, 216 (N.D. Tex. 2020) ("Th[e] test examines whether the two cases under consideration are based on the same nucleus of operative facts . . . rather than the type of relief requested . . . ." (internal quotation marks and citation omitted)).

Because Welsh's policy claims and the claims asserted herein are both predicated on the November UOF and subsequent decision to charge him for tampering with or fabricating evidence, which Welsh attributes to Littlefield, his claims arise from the same common nucleus of operative facts. *See Nordyke v. City of Dallas*, No. 3:22-CV-1183-X, 2023 WL 424789, at *3 (N.D. Tex. Jan. 26, 2023) (concluding that plaintiff's policy claims, *inter alia*, were barred by res judicata because plaintiff's previous claims—under different constitutional theories—also "stem[med] from the same protest involving many of the same alleged bad actors"). Moreover, as also discussed above, the pursuit of any new claims against Littlefield during the progression of his evidence fabrication prosecution should have been brought in *Welsh I*, as Welsh was both aware of any such claims and had the opportunity to do so before final judgment was entered. *See Anderson*, 90 F. Supp. 3d at 672; *see also Heimlich v. Holmes*, No. 01-20080, 2001 WL 1268774, at *1 (5th Cir. Oct. 17, 2001) (Plaintiff did "not dispute that both his prior and instant civil rights complaints alleged violations of his constitutional rights in connection with [the same] prosecution," nor did he "demonstrate[] that the mere reversal of his criminal conviction gave rise to a new legal cause of action."). As such, Welsh's claims against Littlefield should be dismissed as barred by res judicata.

## V.    Recommendation

For these reasons, the undersigned recommends that the United States District Court dismiss with prejudice all claims asserted against all Defendants under 28 U.S.C. § 1915 for failure to state a claim.

## VI.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: April __70__ 2024.

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**