UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| LONNIE KADE WELSH,<br>Institutional ID No. 6516607<br><br>Plaintiff,<br><br>v.<br><br>ROSS HESTER, *et al.*,<br><br>Defendants. | No. 5:20-CV-00077-H |

**OPINION AND ORDER**

In this civil-rights action under 42 U.S.C. § 1983, Plaintiff Lonnie Kade Welsh, a self-represented sexually violent predator (SVP) confined in the Texas Civil Commitment Center (TCCC), sues Defendants City of Littlefield, Chief of Police Ross Hester, Lamb County District Attorney Scott Say, and Lamb County Assistant District Attorney Rickie[1] Redman. He complains that the defendants violated his constitutional rights in connection with their initiation and pursuit of state criminal charges against him following an incident at the TCCC. Defendants have each moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and Defendants Hester, Say, and Redman assert their entitlement to qualified immunity. Dkt. Nos. 78, 80, 82, 90. Welsh filed a brief in opposition with an incorporated request for leave to amend his complaint. Dkt. Nos. 94, 94-1, 94-2, 94-3. Defendants filed replies and briefs in support of their motions to dismiss. Dkt. Nos. 96, 97, 98. And Plaintiff filed a sur-reply, Dkt. No. 99.

[1] Defendant Redman informed the Court that her first name is misspelled in the style of this lawsuit. Dkt. No. 78 at 1, n.1. The Court directs the Clerk to change the spelling on the docket of this case to reflect that the correct spelling is "Rickie."

As explained below, after considering the briefing of the parties and the applicable law, the Court finds that Welsh has not pled sufficient facts to state a violation of federal or constitutional law, nor has he overcome the individual Defendants' assertion of qualified immunity. Thus, the Court grants Defendants' motions to dismiss and dismisses Plaintiff's complaint and all remaining claims alleged in it. In reaching that conclusion, the Court also denies Plaintiff's request to amend, Dkt. No. 94-1 at 26, and grants Defendant Say's motion to strike Plaintiff's sur-reply, Dkt. No. 100.

## 1. Background

Plaintiff is a frequent and experienced litigant with a history of abusive litigation. *See Welsh v. Lamb Cnty*, No. 5:20-CV-00024, at Dkt. No. 128 (N.D. Tex. Sept. 16, 2024). His frustrating litigation tactics have earned him sanctions at every level of the federal court system as well as in the state courts.[2] Most recently, the Fifth Circuit ordered Welsh to pay a $500 sanction and barred him from filing any pleadings in that court, or in any court subject to its jurisdiction without leave of court. *See Welsh v. Williams*, No. 24-11108 (5th Cir. Aug. 7, 2026). It is against that backdrop that this Court's third review of the claims raised in this case begins.

[2] The Supreme Court of the United States found that Plaintiff "has repeatedly abused th[e] Court's process." *See Welsh v. Lamb Cnty.,* No. 22-10311, 2024 WL 81580, at *2 (5th Cir. Jan. 8, 2024) (citing *Welsh v. Collier*, 143 S. Ct. 1046 (2023)). The Fifth Circuit has noticed Plaintiff's "multitude" of filings and his tendency to name the same defendants and raise parallel issues or similar claims across multiple cases. *Id.* And the Fifth Circuit sanctioned Plaintiff at least four times for continuously "fil[ing] frivolous or repetitive pleadings." *See Welsh v. Williams*, No. 24-11108 (5th Cir. Aug. 7, 2026); *Welsh v. Thorne*, No. 23-11109, 2024 WL 1956145, at *2 (5th Cir. May 3, 2024); *Welsh v. McLane*, No. 23-50912, 2024 WL 1008593, at *1 (5th Cir. Mar. 8, 2024); *Welsh v. Jennings*, No. 25-10605, 2025 WL 3485820, at 2. Finally, this Court declared Plaintiff a vexatious litigant. *Welsh v. Lamb Cnty*, No. 5:20-cv-00024, 2024 WL 4203355, at *22–23. He has also been deemed a vexatious litigant by the Texas state-court system and "is prohibited from filing pro se any new litigation in a court of this State without first obtaining permission from the local administrative judge." *In re Welsh*, No. 09-23-00027-CV, 2023 WL 2175768, at *1 (Tex. App. Feb. 23, 2023).

### A. Factual Background

The Fifth Circuit summarized the relevant factual background as follows:

> In 2015, Welsh was committed to the Texas Civil Commitment Center (TCCC). On November 13, 2017, Welsh allegedly became combative towards TCCC staff. He was restrained. Welsh then asked the TCCC's director of security to call police so that he could report that he was assaulted by facility staff. Welsh spoke with the Littlefield, Texas, Police Chief, Defendant-Appellee Ross Hester, and said that his face had been slammed into the floor by TCCC staff. Hester observed that Welsh had injuries to his face and hands.
>
> But, reviewing video documentation and witness statements, Hester concluded that Welsh had not been assaulted. On Hester's viewing, the video did not clearly show that Welsh was injured by the staff's restraints. And eyewitness and other contemporaneous accounts indicated that Welsh's injuries were self-inflicted.
>
> Following the November 13 incident, Welsh was isolated at TCCC from November 13 to 27, 2017. Hester presented information to the County Attorney for Lamb County, Texas, that Welsh had made a false report to a police officer under Texas Penal Code § 37.08, and that Welsh had tampered with or fabricated physical evidence under Texas Penal Code § 37.09. Based on an affidavit from Hester, a magistrate issued an arrest warrant on November 27, 2017, and Welsh was taken into custody by Lamb County on November 28, 2017. Welsh was prosecuted only for allegedly tampering with physical evidence. He was convicted on May 18, 2018, and was sentenced to 11 years' imprisonment.
>
> In February 2019, the Amarillo Court of Appeals issued a judgment of acquittal because Welsh's conviction was unsupported by the evidence. *See* 570 S.W.3d 963. The statute of conviction required Welsh to present a "thing" in an investigation "with knowledge of its falsity." *See* Tex. Penal Code § 37.09(a)(2). As the Court of Appeals pointed out, even assuming the injuries were a "thing," they were "undisputedly real." 570 S.W.3d at 967.

Dkt. No. 69 at 3–4.

### B. Procedural Background

The operative pleading in this case is Welsh's second amended complaint, Dkt. No. 19, as supplemented by his responses to the Magistrate Judge's (MJ) questionnaire, Dkt. No. 23. The procedural history of this case is complex and has been set out in multiple pleadings, but the Court finds it appropriate to summarize once again:

- Welsh began this civil action complaining of events related to state criminal proceedings following a November 2017 incident at the TCCC, and it was transferred to the United States Magistrate Judge to conduct preliminary screening under 28 U.S.C. § 1915.[3]

- The MJ reviewed Plaintiff's second amended complaint, his answers to the Court's questionnaire, and the authenticated records provided by the Defendants. On December 16, 2020, the MJ entered thorough findings, conclusions, and recommendations (FCR) that the Court dismiss all of Plaintiff's claims for failure to state a claim. *See* Dkt. No. 24. And after appropriate review, Senior United States District Judge Sam R. Cummings overruled Plaintiff's objections, adopted the FCR in full, and dismissed Plaintiff's claims with prejudice. *See* Dkt. Nos. 33, 34. Welsh moved to alter amend the judgment under Federal Rule of Civil Procedure 59(e), Dkt. No. 35, which the Court denied, Dkt. No. 36. Plaintiff appealed. Dkt. No. 38.

- On January 8, 2024, the Fifth Circuit vacated the Court's judgment and remanded the case to consider whether this suit was barred by res judicata and, if not, whether the MJ "properly identified and resolved any factual conflicts between Welsh's complaint and the *Martinez* report." *Welsh v. Lamb Cnty*., No. 22-10311, 2024 WL 81580, at *3 (5th Cir. Jan. 8, 2024); Dkt. No. 49. The appeals court did so after noting Plaintiff's propensity to file lawsuits raising similar claims against the same defendants and specifically observing the overlap between the instant case and another recent case—No. 5:18-CV-00020—involving the same November 2017 incident. So the Fifth Circuit concluded that "[t]he multitude of Welsh's filings and

---

[3]When he filed his complaint and IFP application, Welsh was housed at the Texas Civil Commitment Center under an order and judgment of civil commitment. Thus, in this case, he is not a "prisoner" under 28 U.S.C. § 1915(h) and is not subject to the screening provisions of the Prison Litigation Reform Act. However, because Welsh sought and was granted leave to proceed IFP, he was still subject to the screening provisions of 28 U.S.C. § 1915(e)(2). Moreover, the acts of which he complains stem from alleged violations during his state criminal proceedings. The Court therefore evaluates his claims under the constitutional standards applicable to pretrial detainees—not civilly committed persons.

parallel issues raised make remand appropriate to consider whether Welsh's current claims are barred by res judicata and the successive claims doctrine." *Id*. at 4.

- On April 30, 2024, the MJ entered his second findings, conclusions, and a recommendation that the Court dismiss Welsh's claims based on claim-splitting or res judicata grounds (except for his claims against Lamb County, which involved only a legal, merits-based analysis). Dkt. No. 51. So, the MJ did not consider whether it properly relied on authenticated records in dismissing Welsh's claims in the first instance. *See id*. at 4, n. 5. Judge Cummings then adopted the FCR over Welsh's objections and dismissed the case with prejudice. Dkt. Nos. 59, 60. Welsh appealed. Dkt. No. 62.

- On June 6, 2025, the Fifth Circuit issued an opinion detailing the interrelated claims Plaintiff asserted in the two underlying lawsuits (Nos. 5:18-CV-00020 and 5:20-CV-00077), which were assigned Fifth Circuit case numbers 24-10540 and 24-10576, respectively, and consolidated on appeal. *See* Dkt. Nos. 68, 69. In short, the Fifth Circuit affirmed the dismissal of this case in part but vacated the Court's judgment "as to the claims that accrued during or after trial because it has not been shown that Welsh had a meaningful opportunity to bring those claims in the first case [No. 5:18-CV-00020]." Dkt. No. 69 at 3.

- This Court then ordered service and responsive pleadings from Defendants Ross Hester, City of Littlefield, Scott Say, and Rickie Redman as to the remanded claims. Dkt. Nos. 75, 87. Defendants each appeared and moved to dismiss Welsh's claims for failure to state a claim. Dkt. Nos. 78, 80, 82, 90.

### 2. Welsh's Remaining Claims

In his second amended complaint, Welsh divides his claims into seven counts for relief. *See* Dkt. No. 19. But the Fifth Circuit only partially vacated the prior dismissal as to Defendants[4] Hester, Littlefield, Say, and Redman and remanded only the five counts with claims predicated on what happened in the state-court criminal trial and the related proceedings because Welsh did not have a meaningful opportunity to bring those claims in

[4] The Fifth Circuit concluded that the claims against Lamb County were properly dismissed, so the Court omits mention of Lamb County from any remaining ground in which it was named. However, the Court discusses Lamb County's involvement to the extent Welsh sues Defendant Say as an alleged policymaker for Lamb County.

his earlier case, No. 5:18-CV-00020. *See* Dkt. No. 69 at 3. Specifically, the Court vacated and remanded for further proceedings Plaintiff's claims that: (1) Defendants City of Littlefield, Littlefield Police Chief Ross Hester, Lamb County District Attorney Scott Say, and Assistant Lamb County District Attorney Rickie Redman, attempted to deprive him of due process at trial by means of perjury, by admitting prejudicial evidence, or by preventing Plaintiff from introducing exculpatory evidence (Count I); (2) Defendants Littlefield and Hester selectively prosecuted him based on his status as a Sexually Violent Predator (SVP) in violation of his equal protection and due process rights (Count III); (3) Defendants Littlefield, Hester, Say, and Redman subjected him to cruel and unusual punishment based on wrongful incarceration for a crime he did not commit (Count IV); and (4) Defendants Littlefield, Hester, Say, and Redman violated his Fourteenth Amendment right to equal protection when they prosecuted him for defending himself (Counts VI and VII). Plaintiff seeks monetary damages for his alleged injuries. Dkt. No. 19 at 16–20.

## 3. Legal Standards

### A. Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court must accept well-pleaded factual allegations as true, but the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) ("to survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's

grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555)).

A claim is facially plausible when it asserts facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This determination is context-specific and requires the court to draw upon its own experience and common sense. *Id*.

**B. Section 1983 and Qualified Immunity**

Section 1983 "provides a claim against anyone who 'under color of any statute, ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). "A plaintiff makes out a [Section] 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293–94 (5th Cir. 2019) (quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

However, "[t]he doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370–71 (5th Cir. 2011). Defendants who perform discretionary duties—such as police officers and jailers—may invoke the affirmative defense of qualified immunity in response to a plaintiff's Section 1983 suit. Once the defense of qualified immunity has been raised, the plaintiff has the burden of demonstrating that "(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time." *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (quoting *Morgan*, 659 F.3d at 371). Courts may decide "which of the two prongs of the qualified

immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Once a court determines that the right asserted was not clearly established, it need not reach the more difficult constitutional question. *Id.* at 242; *Morgan*, 659 F.3d at 384 ("Because we have granted immunity to the [defendants] at step two of the qualified-immunity analysis, it is within our discretion to decline entirely to address the constitutionality of the defendants' conduct."). "[C]ourts should think hard, and then think hard again, before turning small cases into large ones." *Camreta v. Greene*, 563 U.S. 692, 707 (2011).

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether the plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276–80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be sure that, if the facts alleged by plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller*, 876 F.2d 1209, 1212 (5th Cir. 1989).

A mistake in judgment does not cause an officer to lose his qualified immunity defense. The Supreme Court explained long ago that "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341–43 (1986)). And "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Further, that the officer himself may have created the situation does not

change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352–53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. *Kovacic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). The standard is demanding. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and modifications omitted). "There are two ways to demonstrate clearly established law." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021). In the typical case, the plaintiff "identif[ies] a case or body of relevant case law in which an officer acting under similar circumstances . . . was held to have violated the [Constitution]." *Id.* (quotation marks and citations omitted). This approach "do[es] not require a case directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S.731, 741 (2011). That is, the clearly established law upon which the plaintiff relies should not be defined at a high level of generality but must be particularized to the facts of the case. *Id.*

Thus, failure to identify a case in which an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id.*; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017). In rare cases, however, "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Dist. of Columbia v.*

*Wesby*, 583 U.S. 48, 64 (2018); *cf. Taylor v. Riojas*, 592 U.S. 7, 9 (2020) ("Confronted with the particularly egregious facts of this case, any reasonable officer should have realized that [the plaintiff's] conditions of confinement offended the Constitution."). Qualified immunity raised in a motion to dismiss must be considered and decided by the district court before other litigation in the case proceeds, and all discovery must be stayed during that process. *Carswell v. Camp*, 54 F. 4th 307, 311 (5th Cir. 2022).

**4. The Motions to Dismiss, Plaintiff's Response, and Defendants' Replies**

Each of the Defendants now move to dismiss Welsh's claims against them under Rule 12(b)(6), arguing essentially that the allegations in his complaint fail to state a constitutional claim. Alternatively, Defendants Hester, Redman, and Say assert that they are entitled to qualified immunity. The defendants also argue that Welsh should not be permitted to replead at this stage of the case. Plaintiff filed a response in opposition, and the Defendants replied. The Court will summarize each pleading in turn below.

**A. Rickie Redman's Motion and Brief in Support (Dkt. No. 78)**

In her motion, Defendant Redman, who was the Assistant District Attorney (ADA) at the time of Welsh's allegations, moves to dismiss Plaintiff's claims on several grounds. Generally, she contends that Welsh's complaint does not meet the *Iqbal*[5] / *Twombly*[6] pleading standard. But as a threshold matter, Redman argues that all of Welsh's claims against her fail because they involve her actions as a prosecutor, and thus she is entitled to absolute prosecutorial immunity. *See* Dkt. No. 78 at 5–8. She notes that absolute prosecutorial immunity applies even if the prosecutor knowingly uses perjured testimony or withholds

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

exculpatory information under *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987). *See id*. at 11. And she asserts that if Count I relates to the evidence the State presented at trial, such decisions are within the course and scope of a prosecutor's role. But as to Welsh's claim that he was prevented from presenting exculpatory evidence, that falls within the role of the trial judge. *See id*. at 12.

Redman then argues that Welsh's Count VI, alleging "cruel and unusual punishment based on wrongful conviction," is most likely a malicious prosecution claim, which is also barred by absolute prosecutorial immunity. *See id*. at 7. But even if the claim is read as a cruel-and-unusual-punishment claim, it still fails to survive prosecutorial immunity. Redman argues that Counts VI and VII, alleging violations of Welsh's Fourteenth Amendment right to equal protection when she prosecuted him for defending himself, likewise involves her conduct in the role of prosecutor, so those grounds are barred by prosecutorial immunity.

Alternatively, Redman argues that even if the Court determines that any of Welsh's allegations concern acts outside of her role as prosecutor, his allegations fail to overcome her entitlement to qualified immunity. *See id*. at 8–10. This is so because Welsh cannot establish both that she violated his constitutional rights in the first place and that her actions were objectively unreasonable in light of clearly established law at the time of the violation. *Id*. at 9.

And finally, Redman argues that even without prosecutorial or qualified immunity, Welsh's claim that she violated his Fourteenth Amendment right to equal protection when she prosecuted him for defending himself fails because he has not articulated the class of

individuals he is allegedly being treated differently than, and because SVPs are not a protected class. *Id*. at 10–11.

**B. City of Littlefield's Motion to Dismiss (Dkt. No. 80)**

The City of Littlefield moves to dismiss all of Welsh's claims because he has only alleged an isolated incident and has not set forth necessary facts to establish a plausible claim under *Monell.*[7] *See* Dkt. No. 80 at 10–14. Littlefield also contends that it lacks the power to prosecute or incarcerate Welsh for the crime he was alleged to have committed, and notes that the DA and ADA at the time—Defendants Say and Redman—were not employees of the city. *See id*. at 14. Moreover, although Defendant Hester was employed by the city at the time as Chief of Police, a police officer lacks the power to prosecute or incarcerate either. *See id*. at 7. But even if he did, and as much as Welsh seeks to hold the City of Littlefield liable for Hester's alleged perjured testimony, the City of Littlefield cannot be held liable for his actions because to do so would impose *respondeat superior* liability which is not permitted under *Monell*. *See id*. at 13–14. Finally, the City of Littlefield argues that Welsh's equal protection claims fail for the same reasons argued by Defendant Redman: that is, SVPs are not a protected class for equal protection purposes. *Id*. at 15–16.

**C. Scott Say's Motion to Dismiss (Dkt. No. 82)**

In his motion, Defendant Say, who was the District Attorney at the time of Welsh's allegations, moves to dismiss Plaintiff's claims on similar grounds to those raised by Defendant Redman. First, he argues that he is entitled to absolute prosecutorial immunity for the actions taken within the scope of his prosecutorial duties. *See* Dkt. No. 82 at 6–8. Say also argues that as prosecutor, he does not promulgate policy on behalf of Lamb

[7] *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

County. Rather, when he engages in prosecutorial duties and enforces a charge of state law, he acts on behalf of the State of Texas, not the County. *Id*. at 8–9. Thus, any claims which Welsh raised against him as "Lamb County through its principal agent and policy maker Scott Say" must be dismissed. *Id*. at 8–9.

As to Welsh's allegations that his Fourteenth Amendment due process rights were violated during the criminal trial, Defendant Say argues—along with his entitlement to prosecutorial immunity—that such claims should be dismissed because the *Younger*[8] abstention doctrine cautions federal courts to refuse to decide questions arising from state criminal prosecutions in civil rights cases. *See id*. at 9. Say notes that Welsh had the means and opportunity to present any claims alleging prosecutors used tainted or prejudicial evidence and perjured testimony, or prevented him from presenting exculpatory evidence, but he failed to do so in his appeal. *See id*. at 9–10.

Next, Defendant Say argues that Welsh "blatantly fails to state a claim" that his confinement in the Lamb County Jail and TDCJ resulting from his arrest and conviction for tampering with evidence amounts to cruel and unusual punishment under the Eighth Amendment. *See id*. at 10–11. Say notes that Welsh's allegations, as supplemented by his response to the Court's questionnaire, seem simply to complain about the very fact of his incarceration, but include no facts about the conditions of his confinement during that time. *Id*. Thus, his cruel-and-unusual-punishment claim should be dismissed.

Defendant Say also argues that Welsh's Fourteenth Amendment equal protection claim fails for essentially the same primary reason given by the other defendants: SVPs are not a protected class. *See id*. at 11–13. Say then argues that Welsh cannot establish a "class

[8] *Younger v. Harris*, 401 U.S. 37 (1971).

of one" equal protection claim because his conclusory allegations fail to show that he was intentionally treated differently from others similarly situated. *Id.* at 12–13.

Finally, Defendant Say argues that, if he is not entitled to absolute prosecutorial immunity, he is entitled to qualified immunity for acts performed in the course of administrative duties and investigatory functions that do not relate to his preparation for the initiation of the prosecution or for judicial proceedings. *Id.* at 13–14. Defendant Say maintains that Welsh's vague and conclusory allegations deal entirely with actions taken in the scope of his prosecutorial duties. *Id.* at 14. But if the Court disagrees, Say contends that Welsh has still failed to state a violation of his constitutional rights, and his conclusory assertions hardly—if at all—specify Say's personal involvement. *Id.* Finally, Say notes that Welsh has alleged no facts or provided no case law to demonstrate that his actions were objectively unreasonable in light of clearly established law. *Id.*

**D. Ross Hester's Motion to Dismiss (Dkt. No. 90)**

Defendant Hester, who was the Littlefield Chief of Police at the time of the allegations, moves to dismiss Welsh's claims under Rule 12(b)(6) because his allegations do not satisfy the *Iqbal/Twombly* pleading standard, and in any event, Hester is entitled to witness immunity and qualified immunity. Dkt. No. 90 at 1. Hester notes that Welsh's claims all arise out of Hester's investigation, presentment of charges, and his testimony—all of which "collapse into the testimony at the criminal trial and suppression hearing, things for which he has absolute witness immunity." Dkt. No. 90 at 2. Hester contends that, as a result, his testimony cannot be the basis for a Section 1983 claim. *See id.* at 13.

Hester denies that he committed perjury, but he argues that Plaintiff's perjury claim is foreclosed by common law witness immunity extended to police officers—even for

alleged perjury—under *Briscoe v. LaHue*, 460 U.S. 325, 340–44 (1983). *See* Dkt. No. 90 at 10–12. And Hester points out that a police officer does not offer evidence or seek to exclude evidence at trial—that is the responsibility of the attorney or pro se litigant. *See id*. at 10. So he cannot be held liable under Welsh's claim that he was denied due process at trial based on the admission of alleged prejudicial evidence or preventing Plaintiff from introducing exculpatory evidence. *Id*.

Hester notes that the district attorney or county attorney has exclusive authority to prosecute crimes under Texas law—so, as a police officer, Hester lacked any authority to prosecute crimes Plaintiff in the first place. *See id*. at 9. Because Hester did not have the power to prosecute Welsh, there is no basis to sue Hester for cruel and unusual punishment. *Id*. at 16. Hester also contends that, to the extent his act of investigating Welsh's alleged criminal activity is the basis for Welsh's equal protection claim, the claim is not viable because Welsh's status as an SVP does not place him in a protected class. *See id*. at 13–15.

Alternatively, Hester asserts that even if he were not entitled to absolute witness immunity, he is entitled to qualified immunity because Welsh cannot establish that he violated Welsh's constitutional rights and that his actions were objectively unreasonable in light of clearly established law at the time of the violation. *See id*. at 9–10. Because Welsh cannot overcome his entitlement to qualified immunity, the claims against him must be dismissed.

**E. Plaintiff's Brief in Opposition (Dkt. Nos. 94-1, 94-2, 94-3)**

Welsh's brief in opposition makes several arguments against the motions to dismiss, but it primarily restates his claims and attempts to add new facts and exhibits in support of the allegations in his amended complaint. *See* Dkt. No. 94-1 at 27-23. Welsh also seems to

assert that because he briefed the immunity arguments raised by the defendants on appeal, the "law of the case" doctrine forecloses this Court's ability to review them now. *See* Dkt. No. 94-1 at 15. But he states that he is again briefing those arguments "for the sake of argument without waiving this objection." *Id*. at 15. Welsh then complains that none of the defendants addressed his failure-to-protect claim. *See* Dkt. No. 94-1 at 27-23. Welsh concludes his brief by seeking leave to amend his complaint, yet again, to add the factual allegations contained within the brief of "the continued lies, destruction of evidence, civil conspiracy, and fabrication of evidence by Hester, Say, and Redman." Dkt. No. 94-1 at 32. He also seeks to plead that Defendants Say and Redman violated his rights instead of Lamb County. *Id*. Plaintiff also included a collection of unauthenticated transcripts from different pretrial hearings and the trial in his criminal case. *See* Dkt. Nos. 94-1 at 34-56, 94-2, 94-3.

### F. Defendants' Replies (Dkt. Nos. 96, 97, 98) and Plaintiff's Unauthorized Surreply (Dkt. No. 99)

Defendants filed replies, with each arguing that Welsh should not be permitted leave to amend his complaint at this late stage because he has been given ample opportunity to assert his best claims throughout these proceedings. *See* Dkt. Nos. 96 at 1-3; 97 at 1; 98 at 6. Additionally, the defendants object to Welsh's inclusion of transcripts for similar reasons. For instance, Defendants Redman, Littlefield, and Hester assert that Plaintiff's inclusion of transcripts is not proper for responding to a Rule 12(b)(6) motion and should not be considered because doing so would convert the pending 12(b)(6) motions to Rule 56 motions pursuant Federal Rule of Civil Procedure 12(d). *See* Dkt. Nos. 97 at 2; 98 at 3. In any event, Defendants argue that the transcripts do not prove Welsh's arguments or prevent the Court from dismissing the claims based on the arguments asserted in their motions to

dismiss. The Court agrees and will not consider the transcripts in its review of the motions to dismiss.

As to Plaintiff's invocation of the "law of the case doctrine," Defendants City of Littlefield and Hester reply that "[t]his is simply wishful thinking on his part." Dkt. No. 98 at 5. Finally, Defendants all note that none of the claims remanded by the Fifth Circuit included a failure-to-protect claim, so that part of his response lacks merit. *See* Dkt. Nos. 96 at 3-4; 97 at 3; 98 at 4. For the same reason, Defendants City of Littlefield and Hester assert that Welsh cannot raise a new conspiracy claim by his brief. *See* Dkt. No. 98 at 4.

In response to the defendants' replies, Plaintiff filed a document arguing that he did assert a failure-to-protect claim in his amended complaint, so he has a right to plead alternate causes for liability. *See* Dkt. No. 99. Defendant Say moved to strike the sur-reply, noting that while Northern District Local Rules provide for a motion, a response, and a reply, "[n]either the local rules of this district nor the Federal Rules of Civil Procedure allow a party to file a surreply as a matter of right." Dkt. No. 100 at 1 (citing *Corbello v. Sedgwick Claims Mgmt. Servs., Inc.*, 856 F. Supp. 2d 868, 890 (N.D. Tex. 2012)); *see also* N.D. Tex. Civ. R. 7.1. The Court agrees that the surreply is neither necessary nor helpful to the disposition of the pending motions and grants the motion to strike. Dkt. No. 100.

**G. Plaintiff's Request to Amend (Dkt. No. 94-1)**

Finally, given the posture of this case, the Court denies Plaintiff's request to amend. Federal Rule of Civil Procedure 15(d) governs the supplementation and amendment of pleadings in federal court. It states:

> [o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is

> defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d). "A supplemental pleading may bring in new claims when the subsequent allegations stem from the original cause of action." *Mangwiro v. Napolitano*, 939 F. Supp. 2d 639, 647-48 (N.D. Tex. 2013), citing *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1194 (5th Cir.1982), *vacated on other grounds by* 460 U.S. 1007 (1983). Whether to grant a motion to supplement is within the discretion of the district court. *Haggard v. Bank of Ozarks Inc.*, 668 F.3d 196, 202 (5th Cir. 2012); *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998).

Judicial decisions to grant or deny Rule 15(d) motions to supplement pleadings are generally based on the same factors of fairness courts weigh when considering motions to amend pleadings under Rule 15(a). *Hyde v. Hoffman-La Roche Inc.*, No. CIV A 304-CV-1473-B, 2008 WL 2923818, at *3 (N.D. Tex. July 30, 2008). These factors include considerations of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] the futility of amendment." *Schiller v. Phys. Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted). "While the text of Rule 15(a) provides that leave should be freely granted, the text of Rule 15(d) does not similarly provide." *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir.1998) (citing Fed. R. Civ. P. 15(d)). Ultimately, it is up to the Court whether to grant leave to amend, and the decision is reviewed for abuse of discretion. *Ashe v. Corley*, 992 F.2d 540, 542. "[L]eave to amend is by no means automatic." *Id.* (internal citation omitted). And leave to amend is unnecessary when the plaintiff has already pleaded his best case. *Wiggins v. La. State Univ. Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citations omitted).

Plaintiff filed his original complaint on March 30, 2020. *See* Dkt. No. 1. He was twice granted leave to amend his complaint, *see* Dkt. Nos. 12, 18, and his second amended complaint filed July 23, 2020 remains the operative pleading in this case. *See* Dkt. No. 19. Plaintiff then responded to the Court's questionnaire, further amending his complaint. Dkt. No. 23. And Plaintiff had the opportunity to hone his claims in response to the MJ's findings, conclusions, and recommendation,[9] Dkt. No. 30, and through his briefing on appeal. The Court finds that Plaintiff has had ample opportunity to amend his complaint to assert his best case. And given this posture, the Court now considers only the limited claims remanded by the Fifth Circuit. The motion to amend is denied, and the Court will consider only the facts previously alleged in the operative pleadings in reviewing the pending motions to dismiss.

**5. Discussion**

In light of this case's tortuous procedural history, and despite Welsh's effort to further obfuscate matters by attempting to add unrelated claims and amend his pleadings long after the time to do so had passed, the Court has endeavored to take a step back and review the remaining claims with fresh eyes. But with the benefit of the Fifth Circuit's latest opinion and the Defendants' briefing, the Court finds that Welsh's claims fail to allege a violation of his constitutional rights. Indeed, the Fifth Circuit held that Welsh did not have a meaningful opportunity to bring the remanded claims in his earlier case, No. 5:18-CV-00020, so these claims were not barred by res judicata, but the MJ thoroughly analyzed these claims at the outset of this civil action. Now, the Court finds that much of the analysis

[9] Six months later, however, Plaintiff attempted to supplement his claims again without first seeking leave to do so, and Judge Cummings struck the unauthorized supplement from the record. *See* Dkt. Nos. 31, 33.

in the first FCR, Dkt. No. 24, is correct, even if any reliance on the authenticated records is omitted. So, for the reasons below and as explained by the FCR and the defendants' briefing, the Court finds that Plaintiff's remaining claims must be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim.

### A. Count I: Due Process

In Count I, Welsh claims that Defendants City of Littlefield, Ross Hester, Scott Say, and Rickie Redman deprived him of due process at trial through perjury, admitting prejudicial evidence, or preventing Welsh from introducing exculpatory evidence. Welsh thus believes that he was falsely imprisoned from June 16, 2018 to August 6, 2019, because his conviction was overturned by the Texas Court of Appeals. *See* Dkt. No. 19 at 3; *see Welsh v. State*, 570 S.W.3d 963 (Tex. App.—Amarillo 2019, pet. ref'd). He alleges that his wrongful conviction "was a deliberate decision from the County and City policy makers to follow a course of action to be the moving force to violate [his] rights." *Id.*

In support of this count, Welsh alleges that several violations of his procedural and substantive due process rights occurred during the prosecution. *Id.* at 6–7; Dkt. No. 23 at 1, 14, 15.[10] For example, he claims Defendants Littlefield and Hester violated his due process rights "by manufacturing a criminal charge" because the underlying "facts of the case do [not] comport with the law" of his charge. *Id.* at 1. Welsh further asserts Defendants "Say and Redman conspired with Chris Woods to dispose of physical evidence of a video tape that continuously videoed Welsh while in an administrative sell [sic] after the physical assault by Woods' staff." Dkt. No. 19 at 7. Welsh also claims Defendants Say and Redman

[10] Page citations to Welsh's Questionnaire responses refer to the electronic page number assigned by the Court's electronic filing system.

relied on Defendant Hester's perjurious testimony in obtaining the conviction. *Id.*; Dkt. No. 23 at 14. Finally, Welsh claims that Defendant Redman improperly "used evidence of [his] sexual crimes to help turn the ire of the jury against him in opposition" to the trial court's orders. Dkt. No. 19 at 7; Dkt. No. 23 at 15. Welsh asserts that the defendants' conduct caused him "severe mental sickness of depression, anxiety, and sleepless nights due to worry, with the added physical illness causing pain by headaches and nausea . . . ."[11] Dkt. No. 23 at 14.

Redman and Say argue that Plaintiff's due process claim fails because they are entitled to absolute prosecutorial immunity for their actions in prosecuting the case, and they are entitled to qualified immunity for any actions that may be construed to have been taken outside of their prosecutorial acts. Hester argues that this claim fails because he has a right to witness immunity. The City of Littlefield argues that this claim fails because Plaintiff has failed to state a viable *Monell* claim.

The Fourteenth Amendment protects against deprivations of liberty accomplished "without due process of law." *Baker v. McCollan*, 443 U.S. 137, 142 (1979). The Due Process Clause encompasses both procedural and substantive rights. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001). Procedural due process guarantees a plaintiff the right to notice and an opportunity to be heard in a meaningful and timely manner. *See Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012). The substantive due process guarantee protects an individual from arbitrary action that shocks the conscience. *See Lewis*, 523 U.S. at 847.

[11] Welsh generally alleges this harm to each claim. *See, e.g.*, *id.* at 13–16.

To begin with, the Court notes that the fact that Welsh's conviction was later overturned does not by itself establish a violation of his due process rights. His "innocence of the charge . . . is largely irrelevant to his claim of deprivation of liberty without due process of law" because "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker*, 443 U.S. at 145. "The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury." *Id.* at 146.

Welsh's next assertion—that Defendants Littlefield and Hester violated his due process rights because the underlying "facts of the case do [not] comport with the law" under his convicted charge—likewise fails. *See* Dkt. No. 23 at 1. The Court interprets this claim as alleging a due process violation because Defendants lacked probable cause to prosecute him for the charged offense. *See* Dkt. No. 19 at 4, 13 (alleging violation of due process rights in part because he was confined without probable cause); Dkt. No. 23 at 1 (alleging that "[t]he facts of the case do [n]ot comport with the law . . ."). Even assuming Defendants Littlefield and Hester lacked probable cause, the United States Supreme Court has "rejected the contention that the initiation of criminal proceedings without probable cause is a violation of substantive due process." *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)) (holding that a plaintiff "must look to the explicit text of the Fourth Amendment as a source of protection for the 'particular sort of government behavior' at issue").

And as to procedural due process, Welsh fails to sufficiently articulate an alleged violation beyond a conclusory assertion that his rights were violated because the "facts of the case do [not] comport with the law." *See* Dkt. No. 23 at 1. Again, Welsh seems to

believe that because his conviction was later overturned, his procedural due process rights *must* have been violated during his initial prosecution and subsequent conviction. But the state appellate court gave no such indication. *See Welsh v. State of Texas*, 570 S.W.3d 963 (Tex.App.—Amarillo, Feb. 26, 2019). And Welsh's ambiguous and conclusory rendition of constitutional buzzwords cannot support a Section 1983 claim. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir. 2005) (holding that vague and conclusory allegations provide an insufficient basis for Section 1983 claims); *Richards v. Johnson*, 115 F. App'x 677, 678 (5th Cir. 2004) (same); *Lloyd v. Jones*, No. 9:18-CV-211, 2019 WL 4786874, at *6 (E.D. Tex. Sept. 10, 2019) ("The Court does not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'") (quoting *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010)), *R. & R. adopted by* 2019 WL 4747850 (E.D. Tex. Sept. 27, 2019). In evaluating the sufficiency of a complaint, courts accept well-pled factual allegations as true but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (2016).

Turning to Welsh's due process claims against Say and Redman, the Court finds that they are barred by absolute prosecutorial immunity. Immunity from suit is a threshold question, which the Court must "resolve[] as early in the proceedings as possible." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). A prosecuting attorney who acts within the scope of his or her duties in initiating and pursuing a criminal prosecution and presenting the government's case is absolutely immune from damages in a civil suit. *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994) ("Acts undertaken by the prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of

absolute immunity"). Absolute immunity protects prosecutors from all liability even when they act maliciously, wantonly, or negligently. *Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985) (holding prosecutors were immune from claims alleging they improperly presented evidence to a grand jury).

A plaintiff may overcome a defendant's prosecutorial immunity by alleging actions that fall outside "initiating the prosecution and in carrying the case through the judicial process." *Boyd*, 31 F.3d at 285. "Prosecutorial immunity, however, applies even if the prosecutor is accused of knowingly using perjured testimony, withholding exculpatory evidence, and failing to make full disclosures of facts. State prosecutors are absolutely immune for their actions intimately associated with the judicial process, including their actions in seeking the issuance of an arrest warrant." *Parsons v. Thompson*, No. 3:17-CV-1796-G-BN, 2017 WL 3279366, at *1 (N.D. Tex. July 11, 2017) (quoting *DeLeon v. City of Dallas*, No. 3:02-cv-1097-K, 2003 WL 22244773, at *1 (N.D. Tex. Sept. 16, 2003)), *R & R adopted*, 2017 WL 3278911 (N.D. Tex. Aug. 1, 2017). "In contrast, a prosecutor's investigative activities are not entitled to absolute immunity because investigation was not part of a prosecutor's traditional official functions." *Wearry v. Foster*, 33 F.4th 260, 266 (5th Cir. 2022) (cleaned up). A prosecutor is afforded only qualified immunity for acts performed in the course of 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016).

Welsh's claims that Redman and Say denied him due process at trial by relying on Hester's alleged perjured testimony and introducing evidence of Welsh's past sexual crimes relate only to their actions in the course of prosecuting and carrying the criminal case

through the judicial process. Thus, they are entitled to absolute immunity from Welsh's due process claims for compensatory damages on those grounds. The same holds true for Welsh's claim that Defendant Redman violated his substantive and procedural due process rights to a fair trial when she introduced into evidence Welsh's prior conviction.

Even if Welsh argues that Say and Redman are not entitled to prosecutorial immunity because some of their conduct amounted to an investigatory function, rather than a prosecutorial function, his claim fails because it is conclusory. Welsh alleges that Defendants "Say and Redman conspired with a Chris Woods to dispose of physical evidence of a video tape that continuously videoed Welsh while in an administrative sell [sic] after the physical assault by Woods' staff." Dkt. No. 19 at 7. In response to the Court's questionnaire, Welsh emphasizes that the trial "judge would not honor [his] subpoena [of the video] because he appointed [a defense attorney] which [Welsh] did not want from the beginning." Dkt. No. 23 at 16. And he complains that his attorney would not subpoena the video and when he spoke to the prosecutor about it, she informed him that she was told there was no video. *Id.* He then alleges without support that Defendant Redman had the footage destroyed. *Id.* at 16–17. The Court finds that this claim must be dismissed because "conclusory allegations, unwarranted factual inferences, or legal conclusions" cannot support a Section 1983 claim. *See In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210; *Sias*, 146 F. App'x at 720. Because Say and Redman are absolutely immune from Welsh's claim that they denied him due process at trial and the related proceedings, and his argument otherwise is entirely conclusory, he fails to state a claim upon which relief can be granted. As a result, the Court finds that Welsh's due process claims against Defendants Redman and Say should be dismissed. *See Epps v. City of Dallas*

*Police Dept*, Civ. Action No. 3:15-CV-3881-L, 2016 WL 1642946, at *1 (N.D. Tex. Apr. 26, 2016) (dismissing at screening claims against district attorney because she was absolutely immune under section 1983).

Finally, to the extent Plaintiff claims that Defendant Hester violated his due process rights through his allegedly perjurious testimony, he again fails to allege a constitutional violation because as a trial witness, Defendant Hester has absolute immunity. *See Enlow v. Tishomingo Cty.*, 962 F.2d 501, 511 (5th Cir. 1992) ("Witnesses, including police officers, are also shielded by absolute immunity from liability for their allegedly perjurious testimony."). In sum, Plaintiff fails to state an actionable claim against any of the defendants for due process violations stemming from his state-court criminal trial proceedings.

**B. Counts III, VI, and VII: Selective Prosecution and Equal Protection**

Welsh next claims that Defendants City of Littlefield, Hester, Say, and Redman selectively prosecuted him in violation of his equal protection and due process rights. Dkt. No. 19 at 4; 14. More specifically, Welsh argues that because he is an SVP, he cannot be held criminally responsible for his actions because he is insane. *Id.* at 4. He alleges that Littlefield and Hester engaged in "discrimination within the law by only prosecuting the SVP insanity class" as "a policy, practice, or custom of" Lamb County. *Id.* When asked in a questionnaire to explain, Welsh responded that "defendants do not prosecute individual[s] who commit similar offenses as Welsh who are mentally ill." Dkt. No. 23 at 6. According to Welsh, he was "maliciously singled out for criminal prosecution based on . . . City of Little Field [sic], and Ross Hester['s] discriminatory animus." Dkt. No. 19 at 5. Similarly, he claims that Defendants City of Littlefield, Hester, Say, and Redman violated his right to equal protection because he was "prosecuted for defending himself." Dkt. No. 23 at 31. To

support his claim, Welsh references the November 13, 2017, incident, in which he claims he was assaulted by Leslie Dimwiddie, Dustin Tijerina, and Arnulfo Hernandez, Jr.[12] *See* Dkt. No. 19 at 7–9. But when he reported the alleged assault, Welsh alleges that rather than pursue criminal charges against the officers, Hester instead pursued criminal charges against Welsh.

Redman and Say argue that these claims fail again because they are absolutely immune for their actions related to prosecuting the criminal case against Plaintiff. Littlefield and Hester argue that this claim fails against them because they lack the authority to prosecute crimes in the first place.

A selective-prosecution claim stems from the Fourteenth Amendment right to equal protection. *Shipman v. Sowell*, 766 F. App'x 20, 26 (5th Cir. 2019). "To prevail on a selective prosecution challenge, a [party] must first make a *prima facie* showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not." *United States v. Greene*, 697 F.2d 1229, 1234 (5th Cir. 1983). Second, the plaintiff "must . . . demonstrate that the government's discriminatory selection of him for prosecution has been invidious or in bad faith in that it rests upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Id.* This second prong is crucial to a selective-prosecution claim because "the mere exercise of some selectivity by the government in instituting prosecutions is not itself a constitutional

[12] The Court notes also that Dimwiddie, Tijerina, and Hernandez are not parties here, but that the alleged assault was among Plaintiff's excessive-use-of-force claims in No. 5:18-CV-00020. However, his claims against those defendants were dismissed following a stipulation of dismissal with prejudice as to all of Welsh's claims asserted against Dimwiddie, Tijerina, Hernandez, and other Correct Care Recovery Solutions employees. *See* No. 5:18-CV-00020 at Dkt. No. 307.

violation." *Id.* Indeed, "the decision to prosecute one person rather than another is one left to executive discretion." *Id.* at 1235.

Even taking Welsh's assertions as true and even if Welsh could establish that similarly situated plaintiffs—other SVPs committing the same crime—have not been prosecuted, Dkt. No. 23 at 6, Welsh has failed to allege that Defendants prosecuted him in bad faith or resting on an impermissible consideration.[13] According to Welsh, he is a member of a protected class because he is an SVP. Dkt. No. 19 at 4. But SVPs do not constitute a protected class. *See e.g.*, *Grohs v. Fratalone*, Civ. No. 137870KMMAIL, 2015 WL 6122147, at *5 (D.N.J. Oct. 16, 2015) ("Persons designated as sexually violent predators are not a protected class."); *see also Allen v. Mayberg*, No. 1:06-CV-01801-BLW-LMB, 2013 WL 3992016, at *7 (E.D. Cal. Aug. 1, 2013) (stating that "SVPs are not a suspect or quasi-suspect class for Equal Protection purposes"); *Hawkins v. Ahlin*, No. 12–0626, 2013 WL 3475187, at *6 n.7 (C.D. Cal. July 10, 2013) (noting the law does not support a finding that civilly committed SVPs qualify for protection as a protected class). And Welsh identifies no other allegedly protected characteristic.

Further, Welsh's conclusory allegation that Defendants acted with a discriminatory purpose does not establish a violation of his constitutional rights. *See Sias*, 146 F. App'x at 720 (holding that vague and conclusory allegations provide an insufficient basis for Section 1983 claims); *Shackelford v. State Bar of Tex.*, No. 3:19-CV-1075-M-BN, 2019 WL 4418277, at

[13] Welsh alleges that Defendants Say, Redman, and Hester said, "on and off the record that they do not care that employees at the TCCC assaulted [him]" and that because Welsh is "a member of the Sexually Violent Predator class of Civilly Committed individuals . . . the TCCC employees can do anything they want to a sex offender as long as they don't kill him." Dkt. No. 19 at 6–7; *see also* Dkt. No. 23 at 12. Such statements, even if true, have no material bearing on whether prosecutors chose to selectively prosecute Welsh while not prosecuting other SVPs.

*3 (N.D. Tex. Aug. 20, 2019) (stating that "while a court must accept all of a plaintiff's allegations as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation'"), *R. & R. adopted by* 2019 WL 4413288 (N.D. Tex. Sept. 16, 2019). Welsh's unsupported selective-prosecution claim falls short.

In short, for these reasons, Welsh's equal-protection and selective-prosecution claims must be dismissed because they fail to state a claim upon which relief can be granted.[14] *See Shipman*, 766 F. App'x at 26 (affirming the grant of a motion to dismiss where plaintiff did "not articulate sufficient facts that, taken as true, plausibly establish a selective-prosecution claim . . . [n]or [did] he allege any facts that, taken as true, would establish a causal connection between [the defendant's] actions and [the plaintiff's] characterization of [the defendant's] motives"); *Reed v. Gonzalez*, No. Civ. A. 499-CV-603-P, 2001 WL 640788, at *4 n.20 (N.D. Tex. June 8, 2001) (dismissing at screening a prisoner's selective-prosecution claim as "a type of equal protection claim" because his "allegation that he was prosecuted and others were not" did not prove that the defendants were motivated by improper considerations).

**C. Count IV: Cruel and Unusual Punishment**

Welsh next claims that Defendants City of Littlefield, Hester, Say, and Redman[15] subjected him to cruel and unusual punishment in violation of the Eighth and Fourteenth

[14] To the extent that Welsh intended to assert a malicious prosecution claim, (Dkt. No. 19 at 5 (alleging he was "maliciously singled out for criminal prosecution . . .")), that claim similarly fails because there is no "freestanding constitutional right to be free from malicious prosecution." *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003).

[15] Redman questions whether this claim was actually asserted against her because Plaintiff did not specifically name her in Count IV of his Second Amended Complaint. *See* Dkt. No. 78 at 4. However, Plaintiff references paragraphs 9 and 10 of his Second Amended Complaint in support of

Amendments when he was "unconstitutional [sic] confined . . . by cruel and unusual means" after he was "punished for a crime he did not commit and/or was unconstitutionally punished while he was mentally insane," which "was a deliberate decision from the . . . City policy makers . . . ." Dkt. No. 19 at 6. In other words, Welsh appears to argue that his wrongful incarceration in the Lamb County Jail and TDCJ—for a crime he did not commit and while he was allegedly insane—amounted to cruel and unusual punishment. The Court finds that Plaintiff has failed to state claim on this ground against any of the defendants for the reasons explained in the MJ's first FCR, Dkt. No. 24 at 23–25 and as summarized below.

First, even if Welsh complains that his confinement was cruel and unusual because his conviction was later overturned, the Court notes that it has already considered and rejected that claim. *See supra*, at Section 5.A (citing *Baker*, 443 U.S. at 145). And to the extent Welsh attempts to restate his wrongful prosecution claim as an Eighth Amendment violation, it fails because he complains of conduct that occurred before his conviction. *See Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) (explaining that the Eighth Amendment's protections apply only to convicted prisoners, the Fifth Amendment applies only to actions by the federal government, and although the Fourteenth Amendment's due process protections extend to claims against municipalities, there is "no substantive due process right to be free from criminal prosecution except upon probable cause"), *see also Good v. City of Irving*, Civil Action No. 3:06-CV-2133-K, 2009 WL 804701, at *6 (N.D. Tex. Mar. 26, 2009). Additionally, to the extent Welsh alleges that this violated his Fourteenth

---

his Count IV. Dkt. No. 19 at 14. Both paragraphs include factual allegations in support of his due process and equal protection claims against Redman. *See id*. at 14–15. So the Court construes Count IV to include her as a defendant.

Amendment right "to be free from punishment," Dkt. No. 19 at 14, the complained-of conduct does not rise to a claim of constitutional dimension. *See Morin*, 77 F.3d at 120.

Welsh's alternative claim that his Eighth Amendment rights were violated because he was convicted while allegedly insane likewise fails. Criminal defendants have a "well-established" substantive due process right "not to be tried or convicted while incompetent to stand trial." *Medina v. United States*, 505 U.S. 437, 449 (1992) (citing *Drope v. Missouri*, 420 U.S. 162, 172 (1975) and *Pate v. Robinson*, 383 U.S. at 375). In a federal habeas proceeding, the court must presume that the state court's competency finding is correct. *DeVille v. Whitley*, 21 F.3d 654, 656 (5th Cir. 1994). A habeas petitioner bears an "extremely heavy" threshold burden to establish sufficient facts to "positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to [his] mental capacity . . . to meaningfully participate and cooperate with counsel during a criminal trial." *Bruce v. Estelle*, 536 F.2d 1051, 1058–59 (5th Cir. 1976) (citation omitted); *see also Carter v. Johnson*, 131 F.3d 452, 460–61 (5th Cir. 1997).

The issue before the Court now however, is whether Defendants violated Welsh's constitutional rights in a Section 1983 context. Thus, this claim amounts to little more than an improper collateral attack on a state trial court factual finding. *See Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) ("Absent specific law otherwise providing, . . . federal district courts lack jurisdiction to entertain collateral attacks on state court judgments."). If the state trial court erred in its competency determination, then Welsh's "remedy was to seek review from a state appellate court, . . . not a federal civil rights lawsuit filed in this Court." *Hicks v. Brysch*, 989 F. Supp. 797, 812 (W.D. Tex. 1997).

Because Welsh fails to state a claim upon which relief may be granted on cruel-and-unusual-punishment grounds, the Court finds that Welsh's Count IV claims must be dismissed.

**D. Policy Claims**

Welsh makes several vague allegations that certain actions related to his claims were "a deliberate decision from . . . City policy makers to follow a course of action to be the moving force to violate his rights." *See e.g.*, Dkt. No. 19 at 3, 6. To succeed on any remanded policy claims against the City of Littlefield through alleged policymaker Defendant Hester, Welsh must not only sufficiently plead cognizable constitutional violations, but he must also establish that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (emphasis omitted); *see also Patin v. Richard*, Civ. No. 6:10-0650, 2011 WL 9118, at *8 (W.D. La. Jan. 3, 2011) (concluding the municipality claims failed because even if the plaintiff "alleged an official policy, custom or procedure," he failed to state an "underlying constitutional violation for which the municipal defendant . . . can be derivatively liable on the basis of its policies or customs"). In other words, Welsh must "show that the municipal action was taken with the requisite degree of culpability" and a "direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404. Moreover, "the burden for establishing municipal liability under § 1983 is stringent." *Good*, 2009 WL 804701, at *8. Welsh must establish: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). The principal agent

or policy maker must have actual or constructive knowledge because "[a]ctions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy . . . ." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984).

Thus, to state a policy claim against the City of Littlefield, Welsh must first establish an underlying constitutional violation and then show either a "policy statement, ordinance, regulation or decision," or alternatively, "persistent, widespread practice" and "actual or constructive knowledge of the governing body or person(s) to whom official policymaking authority has been delegated by the governing body." *Good*, 2009 WL 804701, at *6; *accord Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017). But even if Welsh could establish that Hester acted as the policymaker for the City of Littlefield, Welsh has not pled facts showing any underlying constitutional violation with respect to Hester's actions. Nor has he alleged facts to show either an official policy or a persistent, widespread custom within Hester's knowledge. The Court therefore finds that Welsh's policy claims against the City of Littlefield must be dismissed.

**E. Qualified Immunity**

As previously discussed, Defendants Say, Redman, and Hester have all asserted their entitlement to qualified immunity because Welsh cannot establish that they violated his constitutional rights or that their actions were objectively unreasonable in light of clearly established law at the time of the violation. *See* Dkt. Nos. 77 at 13–14; 78 at 13–15; 90 at 9–12. The Court has determined that Plaintiff has failed to plausibly state a violation of his constitutional rights under Section 1983, so the Court need not examine whether the individual defendants' actions were reasonable in light of clearly established law at the time. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (if the facts alleged do not establish that the

officers' conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Therefore, the Court finds that Defendants Say, Redman, and Hester are entitled to qualified immunity and dismisses Plaintiff's claims against them on this basis as well.

**6. Conclusion**

For the reasons discussed above, after reviewing the pleadings, the Court grants Defendant Say's motion to strike Welsh's surreply, Dkt. No. 100, and directs the Clerk to strike the unauthorized pleading, Dkt. No. 99, from the record in this case. And the Court denies Welsh's request to amend his complaint with additional factual allegations and claims. *See* Dkt. No. 94-1 at 32.

Finally, for the reasons discussed above and in the defendants' motions to dismiss, the Court finds that Welsh has failed to state a claim that the defendants violated his constitutional rights and that his pleadings are insufficient to overcome Defendants Say, Redman, and Hester's entitlement to qualified immunity. Thus, the Court grants the motions to dismiss filed by Rickie Redman, Scott Say, City of Littlefield, and Hester. Dkt. Nos. 78, 80, 82, 90. Plaintiff's complaint and all remaining claims are dismissed with prejudice.

All relief not expressly granted is denied.

Judgment will be entered accordingly.

Dated September 29, 2026.

James Wesley Hendrix
United States District Judge